(No. 33382.—

LA SALLE NATIONAL BANK OF CHICAGO, Trustee, *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed March 24, 1955.*

John J. Mortimer, Corporation Counsel, of Chicago, (L. Louis Karton, and Sydney R. Drebin, of counsel,) for appellant.

Herbert E. Ruben, and Lederer, Livingston, Kahn & Adsit, both of Chicago, for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The city of Chicago appeals from a declaratory judgment of the circuit court of Cook County. holding an amendatory zoning ordinance adopted in 1942 unconstitution and void insofar as it affects certain property owned by plaintiffs, La Salle National Bank of Chicago, as trustee, and Benjamin I. Simpson and Isak Gustafson as beneficiaries.

The property consists of a vacant lot situated at the southwest corner of Sixty-seventh Street and Oglesby Avenue in the city of Chicago, having a frontage of 245 feet along Sixty-seventh Street and a depth of 150 feet along Oglesby Avenue. Plaintiffs desire to erect a ten-story apartment building thereon. Sixty-seventh Street runs east and west and is the southern boundary of Jackson Park immediately north of plaintiffs' lot. One block east of plaintiffs' property is South Shore Drive, on the east side of which are the grounds, buildings and golf course of the South Shore Country Club, extending from Sixty-seventh Street southward to Seventy-first Street and eastward to the shores of Lake Michigan.

In 1923 the city of Chicago adopted a comprehensive zoning ordinance dividing the city into four use districts and five volume districts. Under its provisions the area bounded by Sixty-seventh Street on the north, South Shore Drive on the east, Seventy-first Street on the south and Clyde Avenue on the west was placed in a "2nd Volume" apartment district except for three strips of land: one strip fronting on South Shore Drive overlooking the country club and Lake Michigan was zoned as a "3rd Volume" apartment district; a second strip (including plaintiffs' lot) fronting on Sixty-seventh Street overlooking Jackson Park was also zoned as a "3rd Volume" apartment district; and a row of lots fronting on Seventy-first Street overlooking an Illinois Central Railroad right of way was zoned for

commercial use. In a "3rd Volume" apartment district the maximum permissible height for a building was 198 feet and the maximum ground coverage for a corner lot was 90 per cent, such limits permitting a more intensive development than those applying in "2nd Volume" apartment districts. The amendatory ordinance passed in 1942 changed the volume definitions, and rezoned the strips of land fronting on South Shore Drive and on Sixty-seventh Street into a "2nd Volume" district. In a "2nd Volume" district under the amendatory ordinance the maximum permissible height for a building is 45 feet and the maximum ground coverage for a corner lot is 45 per cent. In the judgment from which this appeal is taken the circuit court found that between 1923 and 1942 there had been no change in the area surrounding plaintiffs' property which would warrant such additional restrictions thereon, and that, on the contrary, the change that did occur was of a nature as to warrant a further intensification of the use of plaintiffs' property. The amendatory ordinance was accordingly declared unreasonable and void as to the lot in question.

The evidence shows that both Sixty-seventh Street and South Shore Drive are major traffic arteries in the city, and that each is serviced by buses of the Chicago Transit Authority. In the block immediately to the east of plaintiffs' property fronting on Sixty-seventh Street there is a store building containing a restaurant. In the square block in which plaintiffs' property is located, bounded by Sixty-seventh Street on the north, Sixty-eighth Street on the south, Oglesby Avenue on the east, and Crandon Avenue on the west, there is an eight-story building erected in 1927, and a number of three-story buildings, two-flat buildings and single-family residences. Immediately to the west of the subject property there is another vacant lot, having a 135-foot frontage on Sixty-seventh Street. On the southwest corner of Sixty-seventh Street and Crandon Avenue, less than one-half block from plaintiffs' property, there is

located a 16-story building known as 6700 Crandon Apartments; and immediately west of that building is another 16-story apartment building. The remaining structures in the block are either three-story apartments or one-story residences. The square block to the south of that in which the subject lot is situated has a five-story building containing about fifty apartments. This building was erected in 1950. The next square block to the east—bounded by Oglesby Avenue on the west, South Shore Drive on the east, Sixty-eighth Street on the north and Sixty-ninth Street on the south—contains the Hyde Park Station of the city water works, which is a distance of about one block from the plaintiffs' lot, and some three-story apartment buildings. In the area bounded by Sixty-ninth Street on the north, Seventy-first Street on the south, South Shore Drive on the east and Crandon Avenue on the west there are eight additional buildings ranging from seven to sixteen stories in height.

Since the passage of the 1942 amendatory ordinance two multistory apartment buildings were erected on South Shore Drive, neither of which comply with the ordinance. In the remaining area three buildings were erected since 1942, two of which are multistory apartment buildings not complying with the amendatory ordinance, and the third of which is a single-family residence.

Plaintiffs introduced expert testimony that the highest and best use of the subject property was as a multistory building; that it would be worth approximately fifty per cent more if improved with a multistory elevator building than if limited to a three-story building; that property fronting on parks and the lake is particularly appropriate for multistory apartment buildings; and that other multistory buildings in the area have enhanced the value of neighboring properties. Defendant produced three residents of the neighborhood, who testified, on the other hand, that the proposed apartment building would create more traffic

and parking problems than would a three-story building; that the small apartments in the proposed building would attract tenants of a different type than those now occupying the larger and more expensive apartments of the existing three-story buildings and duplexes; that the surrounding two-flat and three-story buildings would become less desirable for residential purposes; and that the proposed structure would decrease their value. One of the witnesses, the owner of a three-story apartment building, testified that if three-story buildings were erected on the lot they would bring as much or more rent than the contemplated ten-story building. In addition, an expert formerly employed by the Chicago Plan Commission testified that traffic and parking problems would be increased if the proposed building were erected; that light and air available to the present residents of the area would be decreased; and that population density would be increased to the detriment of the area.

Defendant contends the evidence fails to show that the 1942 amendatory ordinance, as applied to the subject property, is arbitrary and unrelated to the public health, safety and general welfare. The rules of law applicable in the determination of such issues are well established, and were recently reviewed in detail in *Trust Company of Chicago* v. *City of Chicago*, 408 Ill. 91. The statutory authority for the ordinance in question is found in section 73-1 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1953, chap. 24, par. 73-1,) which provides in part as follows: "To the end that adequate light, pure air, and safety from fire and other dangers may be secured; that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted, the corporate authorities in each municipality have the following powers: (1) To regulate and limit the height and bulk of buildings hereafter to be erected;   *   *   *

(3) to regulate and limit the intensity of the use of lot areas, and to regulate and determine the area of open spaces, within and surrounding such buildings." Such provisions constitute an express delegation of the police power of the State, which is that power required to be exercised in order to effectively discharge, within the scope of constitutional limitations, its paramount obligation to promote and protect the health, safety, morals, comfort and general welfare of the people. (*Trust Company of Chicago* v. *City of Chicago*, 408 Ill. 91.) While a city may thus enact zoning ordinances imposing burdens and restrictions upon private property and its use, the governmental power so delegated to interfere with the general rights of property owners is not unlimited. An exercise of the power is valid only when it bears a reasonable relation to the public health, safety, morals or general welfare, (*Hannifin Corp.* v. *City of Berwyn*, 1 Ill. 2d 28;) and although a zoning ordinance may be valid in its general aspects, it may nevertheless be invalid as applied to a particular piece of property and a particular set of facts. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago*, 402 Ill. 321.) The question whether the required relation exists, or whether the ordinance, on the other hand, is essentially arbitrary or unreasonable, is one which is subject to judicial review. (*Offner Electronics, Inc.* v. *Gerhardt*, 398 Ill. 265.) However, where there is room for a legitimate difference of opinion concerning the reasonableness of a particular ordinance, or where the question of reasonableness is fairly debatable, the courts will not interfere with the judgment of the legislative body. The presumption is in favor of the validity of the ordinance, and the party attacking it has the burden of showing affirmatively that it is arbitrary and unreasonable. *Wesemann* v. *Village of La Grange Park*, 407 Ill. 81.

In determining whether a particular ordinance is, in fact, in the interest of the public welfare, each case must

be considered on its own peculiar facts. Among the factors to be given consideration are the character of the neighborhood and the use to which nearby property is put, the extent to which property values are diminished by the restrictions imposed by the ordinance, and the gain to the public as compared with the hardship imposed upon the individual property owner. (*Hannifin Corp.* v. *City of Berwyn,* 1 Ill. 2d 28; *Galt* v. *County of Cook,* 405 Ill. 396.) The validity of amendatory zoning ordinances is tested by the same rules applicable in ascertaining the validity of original zoning ordinances, and where the amendment is clearly arbitrary and unreasonable it is of no force and effect. *Trust Company of Chicago* v. *City of Chicago,* 408 Ill. 91.

Defendant argues that the area in which the property is located is used principally for three-story apartments, duplexes and single-family residences, while plaintiffs insist the neighborhood is characterized by the multistory apartment buildings adjacent to their lot along Sixty-seventh Street and those on South Shore Drive overlooking Lake Michigan. It is evident that the subject lot is eminently suited for multistory apartment development. It is located along a heavily traveled street and fronts on Jackson Park, an area comprising some 650 acres. The history of multistory apartment construction in the city, according to evidence in the record, shows that such developments have characteristically taken place along Lake Michigan and the parks, and such is the case in the area involved here. While the properties in back of the lake and park frontages consist largely of three-story apartment buildings, there are several multistory buildings located along South Shore Drive and on Sixty-seventh Street. Less than a block west of plaintiffs' property there are two 16-story apartment buildings on Sixty-seventh Street overlooking the park, and on the strip of land fronting on South Shore Drive between Sixty-seventh Street and Seventy-first Street four

of the parcels are improved with multistory apartment buildings, two having sixteen stories each and the remaining two being nine stories and seven stories in height, respectively. That lots facing the park and the lake are peculiarly suitable for such improvement was recognized under the original 1923 ordinance, which zoned them in a "3rd Volume" district while the remainder of the area was placed under the "2nd Volume" restrictions. The development of the area since 1942 also supports plaintiffs' contentions as to its character. From 1942 to the time of the trial in this case no apartment buildings complying with the height restrictions of the amendatory ordinance were constructed, although during that period four multistory apartment buildings were completed within the area each of which exceeds such restrictions. It is apparent from an examination of the maps involved in this case and the other evidence in the record that plaintiffs' property is characterized by nearby multistoried apartment buildings. There is no difference, for example, between the subject lot and those in the next block along Sixty-seventh Street on which 16-story apartment buildings are located. It is likewise clear, although there is some evidence to the contrary, that the highest and best use of this property is for an apartment building exceeding the height restrictions imposed by the 1942 amendatory ordinance; that enforcement of the amendment limiting the height of any building on the lot to 45 feet, or three stories, would impose a substantial hardship on the plaintiffs; and that the value of surrounding properties would not be appreciably diminished by the contemplated structure.

In *Trust Company of Chicago* v. *City of Chicago*, 408 Ill. 91, certain property located one block east of the lot involved in the case at bar was rezoned by the 1942 amendatory ordinance from apartment use to a single-family residence use. In holding the amendatory ordinance to be arbitrary and unreasonable, we observed: "It is undisputed

that the area lying between South Shore Drive on the east and Jeffery Avenue on the west, Sixty-seventh Street on the north and Seventy-first Street on the south is an intensely developed residential area commonly known as the South Shore District of Chicago, and is characterized by its numerous apartment buildings, ranging in height from three to sixteen stories, and its numerous dwelling units, ranging in size from one-room hotel type kitchenette apartments to ten-room suites, that it is generally regarded as a very fine and highly desirable apartment district, and that interspersed on almost every street in the area there are located a number of single-family homes, most of which were erected prior to 1923." We further found from the record in that case that "the erection of a multistoried apartment building on plaintiff's property would in no way injure or detract from the general welfare of the city or the general welfare of the community wherein the property is situated or from the general welfare of any community or neighborhood adjacent to said property, when the city or any such community is considered as a whole; and it is as a whole that a municipality or a community must be considered when zoning laws and ordinances are involved. (*Michigan-Lake Building Corp.* v. *Hamilton,* 340 Ill. 284, 298.) It is undisputed that such a multistoried apartment building would furnish homes where not one, but many families could live amid beautiful surroundings, with Jackson Park across from Sixty-seventh Street on the north, and with Lake Michigan and the spacious grounds of the South Shore Country Club across from South Shore Drive on the east." Such observations apply as well to the facts as shown by the record in the case at bar, and the conclusion must follow that the character of the neighborhood affords no basis for the height restrictions involved here.

Defendant argues further that the testimony to the effect that a ten-story elevator apartment building would

increase traffic and parking problems, decrease light and air, and raise the population density, shows the amendatory ordinance has a direct relationship to public health, safety, comfort and welfare and must therefore be sustained. We have examined the evidence with care and find that while the effects relied upon would follow to some extent the erection of a multistoried building, they would not be substantially greater than those which would result from the construction of three-story buildings containing a number of small apartments and complying with the height restrictions of the amendatory ordinance. Moreover, the record indicates that the proposed building will have off-street parking facilities in accordance with the city ordinance providing for minimum off-street parking in connection with new construction. In order to sustain the validity of a change in zoning restrictions there must be a real and substantial relationship to the public welfare. (*Hannifin Corp.* v. *City of Berwyn,* 1 Ill. 2d 28; *Pioneer Trust & Savings Bank* v. *Village of Oak Park,* 408 Ill. 458.) A careful review of the record in the case at bar discloses that there is no substantial relation between the height restrictions imposed by the amendatory ordinance and the public health, safety, comfort or welfare; that such zoning change prevents the land from being put to its highest and best use and substantially depreciates its value without resulting in an appreciable gain to the public. We conclude, therefore, that section 16 of the 1942 amendatory ordinance, which purports to limit the height of apartment buildings in the area to 45 feet, is unreasonable, arbitrary and void as to plaintiffs' lot, and that the circuit court was correct in so holding.

Defendant insists that the evidence is insufficient to support that part of the judgment which declares unreasonable and void section 15 of the amendatory ordinance, prescribing a maximum of 45 percent of the ground area of a corner lot for all buildings exclusive of garage. The con-

tention must be sustained. An examination of the record fails to disclose any evidence relating specifically to this restriction and tending to prove it unreasonable or contrary to the public good. The only evidence pointed out by plaintiffs to sustain the judgment in this respect is the statement of one of their expert witnesses who, after testifying that the highest and best use of the property would be for a multistory apartment building, said: "In expressing my opinion as to the highest and best use I took in consideration that the property would have a coverage of 50% in Volume 3." Such testimony standing alone is clearly insufficient to sustain the burden of showing affirmatively that the area restrictions are unreasonable. Moreover, one of the plaintiffs himself testified that the contemplated building would occupy less than 45 per cent of the lot area. The judgment of municipal authorities with reference to zoning is conclusive unless it is shown to be arbitrary, capricious and unrelated to the public health, safety or general welfare. (*Wesemann* v. *Village of La Grange Park*, 407 Ill. 81.) Plaintiffs have failed to make such a showing as to the 45 per cent area restriction, and that part of the judgment which declares void section 15 of the amendatory ordinance is erroneous and must be reversed.

For the foregoing reasons, that part of the judgment of the circuit court of Cook County declaring section 16 of the 1942 amendatory zoning ordinance void insofar as it pertains to the plaintiffs' property is affirmed; and that part of said judgment declaring section 15 of said amendatory zoning ordinance void insofar as it pertains to the plaintiffs' property is reversed, and the cause is remanded, with directions to enter judgment in accordance with the views expressed herein.

*Affirmed in part and reversed in part and remanded, with directions.*