Western Terrace Building Corporation, an Illinois Corporation, Plaintiff-Appellee, v. Village of Palatine, a Municipal Corporation, Defendant-Appellant.

Gen. No. 52,683.

First District, First Division.

November 4, 1968.

Rehearing denied November 27, 1968.

Jack M. Siegel and Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, of Chicago (Jack M. Siegel, of counsel), for appellant.

Philip R. Toomin and John M. Daley, of Chicago, for Appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This appeal is taken from a declaratory judgment of the Circuit Court of Cook County holding that the zoning ordinance of the defendant-appellant, the Village of Palatine, is null and void in its application to plaintiff's property. The declaratory judgment permits the plaintiff-appellee, Western Terrace Building Corporation, to use its property for multiple-family units (R–3—General Residence District) eliminating the restriction to single-family units (R–2—Single-Family Dwelling District).

The subject property consists of approximately thirty-five acres of vacant, unsubdivided land fronting on Palatine Road within the corporate limits of the defendant Village. The property had been classified for R–2 single-family purposes under the comprehensive zoning ordinance of 1957 and was so classified when purchased by the plaintiff. The plaintiff began acquisition in the latter part of 1965 with the purchase of five acres and purchased the remaining thirty acres early in 1966. Plaintiff does not deny that he purchased with knowledge of the zoning classification.

Application was made by the plaintiff to the Village to reclassify the subject property from single-family use to apartment use. The hearing before the Zoning Board of Appeals resulted in a recommendation against granting the reclassification. This recommendation was approved by the Village Board on May 23, 1966. The instant suit was filed by plaintiff on July 1, 1966, and subsequently proceeded to trial.

The trial court held that placing the plaintiff's property in the R–2 "Single-Family Dwelling District" classification was an arbitrary action by the Village bearing no relation to the public health, safety, morals, convenience and general welfare of the people. The Court also found that the highest and best use of the plaintiff's property was for multiple-family units and that such units would not "adversely affect the residential property east and/or west of the subject property." The Court ordered that the plaintiff be permitted to use the land for multiple-family units. The Village appeals this final order. No questions are raised on the pleadings.

The Village raises the following issues for review: (1) has the plaintiff overcome the presumption of validity attaching to the zoning ordinance of the Village of Palatine; (2) is the zoning ordinance of the Village of Palatine, as applied to the subject property, a valid exer-

cise of the legislative authority vested in the President and Board of Trustees of the Village. The Village maintains that the trial court ignored the fact that the subject property was similar in all respects to the surrounding areas which had been developed and were now being developed for single-family use.

The plaintiff contends that the Palatine zoning ordinance is invalid as applied to its property, because the ordinance fails to make due allowance for existing conditions and for consideration of property values. The plaintiff further contends that the presumption of validity attaching to the zoning ordinance has been overcome in the case at bar by the evidence and by the physical character of the area in question.

The rule is well-settled in Illinois that a presumption exists in favor of the validity of a zoning ordinance and the one who attacks such an ordinance has the burden of overcoming the presumption by proving with clear and convincing evidence that, as applied to him, it is arbitrary and unreasonable and is without substantial relation to the public health, morals, safety and welfare. Bennett v. City of Chicago, 24 Ill2d 270, 273, 181 NE2d 96. If there is any room for a reasonable difference of opinion, the Court will not substitute its judgment for that of the legislative body. Trendel v. County of Cook, 27 Ill2d 155, 161, 188 NE2d 668; Exchange Nat. Bank v. County of Cook, 25 Ill2d 434, 439, 185 NE2d 250.

The subject property is bounded on the north by Palatine Road. Although several witnesses (and the Palatine Master Plan) described the highway as a limited access junior expressway, Palatine Road tapers to approximately twenty-four feet wide in front of the plaintiff's land. However, to the east and west of the subject property Palatine Road is approximately fifty-four feet wide with four lanes of moving traffic. There are also service roads, twenty-two feet wide, on either side of Palatine Road.

On the north side of Palatine Road across from the subject property is an area completely zoned and developed for R–2 single-family purposes. The area lying to the west of the subject property on the south side of Palatine Road is zoned for R–1 and R–2 single-family uses.

South and southwest of the subject property is a vacant tract of ninety acres fronting on Northwest Highway. This tract is owned by the Winston Park Northwest Corporation (hereinafter referred to as Winston Park), a subsidiary of Winston-Muss Corporation, and is being developed as the "Willow Creek" project. The owners applied for a reclassification of a certain portion of the property from B–1 "Shopping Center District" to B–2 "General Service District," in order to permit as a special use, an auto service station and motel fronting on Northwest Highway. Winston Park also asked that a portion of the tract which had been zoned M "Manufacturing District" be reclassified as B–1 "Shopping Center District." The Zoning Board of Appeals conducted a hearing on the matter about the same time the plaintiff's request was before them and recommended that the petition of Winston Park be denied. The Village Board, however, granted the zoning change. The "Willow Creek" development will consist of two ten-story office buildings, a 50,000 square foot shopping center, a motel, an auto service station, 740 apartment units on a minimum of twenty acres, an enclosed movie theater, and a twenty-five acre park.

Directly east of the subject property was a manufacturing zone. Sometime between January 1958, and January 1966, a portion of the manufacturing zone which had previously been unincorporated was annexed into Palatine as R–2 land. However, that portion of the tract which abutted the plaintiff's land remained zoned M "Manufacturing District." In March of 1967, while the instant case was pending, Winston Park, the owner of

the tract directly east of the subject property, petitioned that their property be annexed into the Village under R–2 "Single-Family Dwelling District." On April 3, 1967, the Village Board approved the annexation. Winston Park then subdivided the property into 138 single-family lots and during April and May of 1967 contracted to build 65 houses in the area. None of the houses were under construction at the time of the trial in June 1967.

Plaintiff proposes to build 600 apartment units in sixteen buildings on the subject property. The two larger structures would be three-story buildings and would be approximately twenty-seven feet high. All of the buildings would be of masonry construction.

Stanley Glodeck, the plaintiff's architect, testified that when the site plan for the subject property was prepared, the vacant land to the east was zoned M "Manufacturing District." He further testified that the soil in the southwest section of the subject property was silty in nature making it uneconomical to develop the property for single-family dwellings. The witness also stated that Palatine Road is a very fast type junior expressway and he had oriented the buildings to face away from the road.

Charles W. Greengard, plaintiff's consulting engineer, testified that in 1959, he had prepared for the then owner (not the plaintiff) a preliminary subdivision plan for ninety single-family homes. The project never went ahead because of the requirement for fill (200,000 cu. yds.) and because of the necessity of digging a drainage ditch to relocate Salt Creek. He further testified that the original owner sold the property to another developer who hired him to prepare additional plans, but this project did not go through either for the same reasons. It was the witness's opinion that the property is not suitable for single-family development.

George Kranenberg, plaintiff's planning and zoning expert, testified that two factors have significantly affect-

ed the subject property. The first of these factors was the development of the interchange of Route 53 and Palatine Road. This interchange, the witness explained, greatly changes the traffic pattern as it relates to Palatine Road and causes the road to be a division line between the extensive single-family development on the north and the subject property on the south. The second factor is the "Willow Creek" project to the south and southwest of the subject property. Kranenberg felt that "Willow Creek," with its 740 apartments, a 175-room motel, the theater and the two ten-story office buildings, would have a tremendous impact on the entire area and destroy the area for single-family use. He also stated that the residential areas east and west of the subject property were old subdivisions which had never developed fully. In his opinion, the highest and best use of the property is for multiple-family dwellings.

Ralph Martin, a real estate broker and appraiser in the northwest suburban area, testified for the plaintiff that, in his opinion, the highest and best use of the subject property was for multiple-family uses. The witness also testified that the subdivision to the west of the subject property was only fifty percent developed and that only part of it had sewer and water facilities. The property to the east of the subject property was only about twenty percent developed and had been vacant for ten or twelve years until the recent development by Winston Park. Martin felt that the plaintiff's development would have no effect on the homes on the north side of Palatine Road because it is separated from them by a 150 foot right-of-way and six lanes of moving traffic. Furthermore, he stated that multiple-family units on the subject property would only be an extension of the apartment development projected for the "Willow Creek" project to the southwest.

Joshua Muss, President of Winston Park and senior Vice-President of Winston-Muss Corporation, testified

that his company had acquired the land east of the subject property in 1957 when it was zoned for manufacturing use. In 1965, and again in 1966, the company petitioned for rezoning to single-family purposes. Both petitions were denied. The requested zoning change was granted in 1967. Muss stated that he did not think the presence of Palatine Road and its interchange with Route 53 had inhibited the development and sale of property north of Palatine Road and south of the road, east of the subject property. The witness also testified that the "Willow Creek" project would not have an adverse effect on the marketability of the subject property for single-family purposes since the nearest building proposed would be 400 feet from the southwest corner of the subject property and no buildings would be located directly south of the property. The motel, theater and office buildings proposed would be on the Northwest Highway 1500 to 2000 feet from the plaintiff's property. Also, there would be a twenty-five acre park south of the subject property. The witness thought that approximately 125 lots could be developed on the subject property and that the cost of removing and filling in quicksand would not be material.

Richard W. Manke, a real estate appraiser, testified for the defendant that, in his opinion, the highest and best use of the subject property which would have no depreciatory effect on the surrounding area would be for single-family use. The witness stated that the interchange of Route 53 and Palatine Road, located one-half mile away to the east of the subject property, would actually have a positive influence on the value of the subject property because the property was more accessible to the home buyer and was far enough removed so that it was not even in sight. Also, there had been no noticeable increase in traffic on Palatine Road. Manke further testified that if plaintiff was allowed to develop

his property with multiple-family buildings, the surrounding properties would be adversely effected.

Rolf C. Campbell, a city planning and zoning consultant, testified that the highest and best use of the subject property is for single-family uses. He said his opinion was based on the suitability of the property for single-family use, the need for single-family development in the area, and compatability with surrounding uses. The witness stated that the subject property draws its character from Palatine Road while the "Willow Creek" project area, zoned for the most part B–1, is associated with the Northwest Highway. Campbell further testified that he thought multiple-family development of the subject property would adversely affect the livability of single-family homes on Palatine Road.

There was also a considerable volume of testimony concerning the value of the subject property zoned for multiple-family use as opposed to the property zoned for single-family dwellings. Suffice it to say that the property will be greatly enhanced in value if it is rezoned for multiple-family purposes. There was also much evidence concerning traffic conditions and the general character of the area surrounding the subject property.

We have not attempted to set forth the testimony of the various witnesses in great detail. However, since the reasonableness and validity of a zoning ordinance is determined upon the particular facts of a case (La Salle Nat. Bank v. City of Chicago, 5 Ill2d 344, 125 NE2d 609) we have briefly summarized some of the highlights of the evidence in the case at bar.

It is well settled in Illinois and most other jurisdictions that zoning ordinances are enacted by municipalities under their police power. People ex rel. Schimpff v. Norvell, 368 Ill 325, 13 NE2d 960. Such ordinances are for the purpose of creating permanent conditions throughout a village, and are designed to take care of

problems of the present as well as those of the future, to the extent that they can be reasonably anticipated. Mercer Lumber Companies v. Village of Glencoe, 390 Ill 138, 60 NE2d 913. However, when it is shown that there is no reasonable basis in public welfare requiring the restriction and the resulting loss and the gain to the public is small as compared to the hardship imposed on the landowner no valid basis for the exercise of police power exists. Under these circumstances the zoning ordinance must be held invalid as applied to the particular property in question. Marquette Nat. Bank v. County of Cook, 24 Ill2d 497, 182 NE2d 147; Liebling v. Village of Deerfield, 21 Ill2d 196, 171 NE2d 585. Thus, the ultimate legal determination that must be made in every case is whether the zoning classification arbitrarily or unreasonably restricts the use of the land in question. Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370, 167 NE 2d 406.

█ In determining whether a particular zoning ordinance is in the interest of public welfare, each case must be considered on its own particular facts. Among the factors to be given consideration are the character of the neighborhood and *the use to which nearby property is put*, the extent to which property values are diminished by the restrictions imposed by the ordinance, and the gain to the public as compared with the hardship imposed upon the individual property owner. La Salle Nat. Bank v. City of Chicago, 5 Ill2d 344, 125 NE2d 609; Hannifin Corp. v. City of Berwyn, 1 Ill2d 28, 115 NE2d 315.

██ In the case at bar there is conflicting expert testimony about several factual issues including whether the single-family residences to the north, east, and west, will be detrimentally affected by multiple-family development of the subject property. The resolution of such conflicting views is difficult and, in the final analysis, must depend on the facts and circumstances of each case.

Wehrmeister v. County of Du Page, 10 Ill2d 604, 141 NE 2d 26. The trial judge, who saw and heard the witnesses testify and who had the numerous exhibits before him determined that the ordinance as it affected the subject property did not bear any reasonable relation to the general welfare of the Village. When testimony is contradictory it is well established that in a trial without a jury the determination of the credibility of witnesses and the weight to be accorded their testimony are matters for determination of the trial court and its findings will not be disturbed unless they are manifestly against the weight of the evidence. Northern Trust Co. v. City of Chicago, 4 Ill2d 432, 123 NE2d 330.

The evidence establishes that the property to the east of the subject property had been zoned manufacturing and before the recent activity of Winston Park the property had been only slightly developed. The zoning change from manufacturing to single-family residential came after the plaintiff had acquired the subject property. The evidence also shows that the property to the south and southwest of the subject property is owned by Winston Park and was given special zoning changes the same time plaintiff's application was denied. From an examination of the aerial survey exhibit it clearly appears that plaintiff's tract of land and that of Winston Park are parts of a vacant and undeveloped prairie with no distinguishing boundary between them. Winston Park is going to develop part of its land with seven six-story apartment buildings and two ten-story office buildings. However, nowhere in the ordinance passed by the Village does there appear any restrictions on the location of these buildings. The only testimony about building locations came from Joshua Muss, who stated the nearest building would be 400 feet from the southwest corner of the subject property. He also stated there would be no buildings directly south of the plaintiff's property. Changes in location of buildings can be made by the

127

developer at will and without permission from the Village. There was testimony to the effect that the subdivision to the west of the subject property was only 50% developed and that only part of it had sewer and water facilities. Only to the north of the subject property, across Palatine Road, is the land completely developed in single-family residences. These residences, the record shows, are separated from the subject property by Palatine Road, a junior expressway. In addition, there was testimony from George Kranenberg, a planning and zoning expert, that the recently completed interchange of Route 53 and Palatine Road has a great impact on the subject property and that the interchange in conjunction with the "Willow Creek" project destroys the area for single-family development. This testimony necessarily influenced the trial judge that the character of the area had greatly changed and that this changing trend in the development of the area made the single-family dwelling classification of the plaintiff's tract unreasonable and arbitrary. La Salle Nat. Bank v. Village of Skokie, 26 Ill2d 143, 186 NE2d 46; Colvin v. Village of Skokie, 54 Ill App2d 22, 203 NE2d 457.

■ ■ We are not unmindful of the rule that a purchaser with knowledge of a zoning restriction is not regarded favorably by the courts when he asks that the restriction be removed. Lapkus Builders, Inc. v. City of Chicago, 30 Ill2d 304, 310, 196 NE2d 682. Neither do we ignore the fact that much of the subject property is suitable for the purposes zoned. However, here, as we have indicated, the Village made massive changes in the abutting property after the plaintiff acquired the subject property. In many of the cases cited by the Village no changes occurred either in the general character or existing uses in the neighborhood since the plaintiffs acquired their properties as is the situation here. Under the facts

herein presented, the relief granted by the trial judge is justified.

The judgment of the Circuit Court is therefore affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.