THE VILLAGE OF PALATINE, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, *v.* LASALLE NATIONAL BANK, Trustee, *et al.*, Defendants and Counterplaintiffs-Appellees and Cross-Appellants.—(J. B. Duke, Jr., Defendant-Appellee.)

First District (2nd Division)   No. 81—2328

Opinion filed February 15, 1983.—Rehearing denied March 16, 1983.

Littlejohn, Glass & Yowell, Ltd., of Chicago (Bradley M. Glass, of counsel), for appellant.

Richard P. Glovka, of Chicago (Marks, Katz, Randall, Weinberg & Blatt, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

The village of Palatine, Illinois (Palatine) appeals from an order of the trial court declaring its Flood Plain ordinance and its height ordinance invalid and enjoining it from applying those ordinances to prevent the completion of a residential real estate development known as Baybrook. The Flood Plain ordinance, prior to its recent amendment, would have prevented all construction on the proposed site of Baybrook, while the height ordinance prohibits the completion of the development in accordance with a development plan which was previously approved by Palatine. The owners of the subject property cross-appeal, contending that the application of the Flood Plain ordinance to Baybrook in the past constituted a taking under the fifth amendment to the United States Constitution and under article I, section 15 of the Illinois Constitution, that the trial court erred in failing to make a finding on the issue of whether a taking occurred, and praying that this court find a taking and determine and award just compensation. The trial court's order expressly states that it does not dispose of all of the issues in the case. That order does not contain a finding that there is no just cause to delay enforcement or appeal of the order. On September 27, 1982, Palatine amended its Flood Plain ordinance, and the ordinance as amended would no longer prohibit the completion of Baybrook if it were applied to the subject property. The threshold questions in this case, therefore, are what portions of the trial court's order are appealable under Supreme Court Rules 304(a) and 307(a)(1) (87 Ill. 2d Rules 304(a), 307(a)(1)), and whether the appealable issues raised by the Flood Plain ordinance are now moot as a result of Palatine's subsequent amendment of the ordinance.

This case is part of a long course of litigation between Palatine and the successive owners of the property which is the site of Baybrook, a residential real estate development which now stands more than one-third completed. The subject property is a 35-acre tract located in southeastern Palatine. In 1966, the tract, which was then vacant and unsubdivided, was purchased by Western Terrace Building Corporation. That corporation applied to Palatine for rezoning of the tract from a single-family residential classification (R-2) to a multiple-family classification (R-3) in order to construct an apartment develop-

ment on the site. The application was denied, and Western Terrace brought an action in the circuit court seeking a declaration of the invalidity of the Palatine zoning ordinance as it was applied to the property. The trial court held that the zoning classification of the property was arbitrary and had no relation to the public health, safety, and welfare, and that the highest and best use of the property was for multiple-family dwellings. The court ordered that building permits were to issue to Western Terrace or its successors in interest for the construction of 600 multiple-family dwelling units on the subject property. That order was affirmed on appeal. See *Western Terrace Building Corp. v. Village of Palatine* (1968), 102 Ill. App. 2d 116, 243 N.E.2d 566.

In 1969, I. Pekin Palace, Inc., purchased the tract from Western Terrace for $1,200,000. In 1971, Pekin obtained approval from Palatine for a site plan titled "Baybrook-A Planned Unit Development." The site plan called for the eventual construction of six six-story buildings plus a swimming pool, a cabana, and other improvements. Each building was to contain 89 condominium units, with the development containing a total of 534 units. Construction was to proceed in three phases. Phase I was to encompass the construction of two apartment buildings plus most, if not all, of the improvements which were necessary to serve the entire development. After all the units in Phase I were sold, the two buildings comprising Phase II were to be constructed. After the units in Phase II were sold, construction was to begin on the remaining two buildings comprising Phase III. In 1972, building permits for Phase I were issued, and a joint venture comprised of Pekin and defendant Mutual Trust Life Insurance Company began construction. The property was held in a land trust with defendant LaSalle National Bank as trustee. It appears that Pekin, which is not a party to this action, no longer holds a beneficial interest in the trust. Defendants will be referred to as "the landowners" hereinafter.

Construction on Phase I was essentially completed in 1974, and the last units were sold in 1978. On January 7, 1974, Palatine adopted a Flood Plain ordinance which prohibits virtually all construction in areas designated as Flood Plains. The ordinance defines Flood Plains by reference to the Illinois Department of Transportation, Division of Water Resources (IDOT) Flood Plain Maps and Regulatory Profile Drawings for the Palatine area. Under the IDOT maps, a Flood Plain is the area which would be most affected by the "100 year flood," a hypothetical flood resulting from a 24-hour rainstorm which has a statistical probability of occurring once every 100 years. The develop-

ment of the Flood Plain is strictly regulated because the elevation of the area and the amount of improvement already in the area makes the Flood Plain certain to be inundated by the 100-year flood. Palatine's Flood Plain ordinance refers only to the Flood Plain, while IDOT's regulations subclassify the Flood Plain into areas called the Floodway and the Flood Fringe. Palatine prohibits construction anywhere within the Flood Plain, while IDOT's regulations prohibit construction in the Floodway but allow development of the Flood Fringe. All but a negligible portion of Baybrook is located in the Flood Fringe.

On August 4, 1978, J. B. Duke, who had contracted to purchase Baybrook, applied for building permits for Phase II and Phase III. Duke's contract to purchase the tract was conditioned on the issuance of the permits, and although Duke is a party to this appeal, the contract has expired. Palatine refused to issue the permits for the asserted reason that the operation of the Flood Plain ordinance prohibited the completion of Baybrook. Duke and a representative of Mutual Trust testified that Palatine's refusal to issue the permits was the first notice to them of the existence of the Flood Plain ordinance.

Promptly after the application for the permits was refused, Palatine brought this action in the circuit court for a declaration that the Flood Plain ordinance is valid as applied to Baybrook, that the injunction in favor of Western Terrace did not bar the denial of the application for permits or application of the Flood Plain ordinance to Baybrook, and that the landowners had no right to erect improvements in Baybrook and were enjoined from so doing. The landowners counterclaimed, seeking money damages in the amount of whatever just compensation the court should fix for the inverse condemnation that they contend the application of the ordinance worked as to Baybrook.

In 1979, Palatine adopted its Planned Unit Development (PUD) ordinance which provides for detailed application procedures before Planned Unit Development status is granted to a residential development. In 1978, the landowners had filed an application for official PUD status, but no ordinance declaring Baybrook to be a PUD was ever adopted. Baybrook's site plan which was approved by Palatine in 1971 was entitled "Baybrook-A Planned Unit Development," and Palatine officials testified at trial that Baybrook had always been treated as a planned unit development "in fact" by Palatine.

In 1979, Palatine adopted a height ordinance which restricted the height of buildings built within Baybrook's zoning classification (R-3) to a height of the lesser of 70 feet or four stories. The Planned Unit Development ordinance specifies that the height restriction does not

apply to buildings that are part of a PUD.

On August 7, 1981, the trial court issued an order declaring that the Flood Plain ordinance and the height ordinance were invalid as applied to Baybrook, that the Flood Plain ordinance was invalid on its face, and that Palatine was enjoined from enforcing the ordinances as to Baybrook. The order also stated that the landowners had a vested right to the issuance of building permits for Phase II and Phase III, and it directed Palatine to issue such permits on proper application. The court retained jurisdiction for the purpose of enforcing the order and assessing costs. The order stated that the court did not "consider or decide by implication the other issues raised in this case *** to wit: inverse condemnation; procedural defects in the enactment of the Flood Plain ordinance; the *res judicata* effect of this court's 1967 judgment to bar the application of the Flood Plain ordinance to Baybrook Park; and other points raised by the pleadings and the evidence." Although these issues were left undecided, the trial court did not make a finding that there was no just cause to delay enforcement or appeal of the order.

Palatine appeals, contending that the Flood Plain ordinance is valid and fully applicable to Baybrook and that the height ordinance is likewise valid and fully applicable. The landowners cross-appeal, praying that this court consider the issues left undecided by the trial court, particularly whether the application of the ordinances constitutes a taking under the fifth amendment to the Constitution of the United States and under article I, section 15 of the Illinois Constitution. The landowners also pray that if this court does find a taking, it will determine an amount in just compensation or remand the case to the trial court for such a determination.

On September 27, 1982, Palatine adopted Ordinance 0—95—82, amending its Flood Plain ordinance to adopt the 1982 IDOT Flood Plain maps. Under those maps, Baybrook is no longer in the Flood Plain, and the Flood Plain ordinance, as currently applied, would not bar the issuance of permits for the construction of Phases II and III.

■■ ■ The threshold question presented by this appeal is what, if any, issues are properly before us. The trial court's judgment order expressly made no ruling as to several issues in the case, notable among them the issue of inverse condemnation. That order also reserved jurisdiction for purposes of enforcing the order. Such a reservation of jurisdiction does not render the order unappealable. (See *Moss v. Waytz* (1955), 4 Ill. App. 2d 296, 301, 124 N.E.2d 91.) However, an order that does not dispose of all the issues in a case is not final and appealable in the absence of an express written finding that

"there is no just reason for delaying enforcement or appeal" of the order. (See 87 Ill. 2d R. 304; *Wilson-Jump Co. v. McCarthy-Hundrieser & Associates* (1980), 85 Ill. App. 3d 179, 183, 405 N.E.2d 1322; *McNulty v. Ryan* (1969), 116 Ill. App. 2d 202, 203-04, 253 N.E.2d 661.) The order in this case contains no such finding. The order, however, enjoined Palatine from enforcing its Flood Plain ordinance and from interfering with the landowners' vested right to the issuance of building permits for Phases II and III, thereby enjoining the application of the height ordinance to Baybrook as well. An appeal may be taken from an interlocutory order of the court granting injunctive relief. (87 Ill. 2d R. 307(a)(1).) The notice of appeal in this case is not designated as a "Notice of Interlocutory Appeal" as required by Supreme Court Rule 307(a), and the parties have proceeded on appeal as though all of the issues raised before the trial court were properly before this court. We shall, however, regard this appeal as an interlocutory appeal of the trial court's grant of injunctive relief as to the application of the Flood Plain ordinance and the height ordinance to Baybrook. We regard the other issues raised on this appeal as improper subjects for an interlocutory appeal and do not consider them for that reason.

■ The question of the validity of the Flood Plain ordinance is now moot. On September 27, 1982, the village of Palatine adopted the 1982 IDOT Flood Plain maps. Under those maps, Baybrook is no longer in the Flood Plain, and the current Flood Plain ordinance presents no bar to the completion of Baybrook. The courts will not determine the question of the validity of an ordinance which is no longer in force and which cannot be applied to the complaining parties. (See *Wendell v. City of Peoria* (1916), 274 Ill. 613, 615-16, 113 N.E. 918.) Although Palatine urges the court to apply the public interest exception to the mootness doctrine to rule on this question, we shall not do so.

■ Three criteria are considered in determining whether the public interest exception should be invoked. The first is whether the question is public in nature; the second, whether it is desirable to make an authoritative determination of the question for the guidance of public officials; and third, whether the question is likely to recur. (*Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71, 76, 410 N.E.2d 98, *rev'd on other grounds* (1981), 86 Ill. 2d 390, 427 N.E.2d 162.) In the instant case, any recurrence of the question of the validity of the ordinance would involve its application to property other than Baybrook, with different physical characteristics and different proposed uses. A decision of this court could not

therefore be authoritative as to the application of the ordinance to different tracts of land. Even if a determination of the facial validity of the ordinance is desirable such a determination would have only a limited utility in guiding the actions of pubic officials. If we were to affirm the trial court's holding that the prohibition of development of the Flood Fringe lacks a rational basis because the prohibition arbitrarily deviates from the IDOT regulations, such a holding would only guide the acts of public officials as to properties located wholly within the Flood Fringe. If, on the other hand, we were to hold that the Flood Plain ordinance was facially valid, such a holding would necessarily be based on a determination that Palatine's slight deviation from the IDOT regulations has a rational basis. This is so because the question presented in this litigation was only whether Palatine acted rationally in requiring stricter flood control standards than the State agency which promulgates the statewide standards. A reversal of the trial court would leave landowners affected by the ordinance free to challenge the rationality of the State regulations upon which the ordinance is based, because the rationality of the IDOT standards is not before this court. Because no determination by this court could conclusively decide the facial validity of the ordinance in a way that would guide future litigation or administrative action, we do not consider the question.

The only issue remaining for our consideration is the question of the validity of the height ordinance as applied to Baybrook. The determination of this issue includes the question of whether the height ordinance is applicable to Baybrook under the Palatine Code of Ordinances. Section 11.08 of the Palatine planned unit development ordinance provides that "height of a particular structure shall not in itself be the basis for denial or approval of a planned development." Therefore, if Baybrook is a planned unit development, the height restriction of the lesser of 70 feet or four stories which is generally applicable to property in R-3 zoning could not be applied to prevent the construction of the four six-story buildings which remain to be built in Phases II and III.

The original site plan for Baybrook which was approved by Palatine in 1971 was entitled "Baybrook-A Planned Unit Development." In correspondence, Palatine officials referred to the development as "Baybrook PUD" as late as 1978. Palatine's village president testified at trial that Palatine had always treated Baybrook as a PUD. Palatine contends that Baybrook is not and could never have been a PUD because the landowners never made an application to have it treated as such. Palatine states that the PUD ordinance sets forth detailed appli-

cation procedures for PUD status that were never complied with by the landowners. That ordinance, adopted in 1979, requires that the developer of a PUD submit several sets of site plans to Palatine for approval. Those plans must include detailed information concerning the proposed development, and the plans must be approved by the village president, the planning commissioner, and the village board of trustees. The developer must also post surety bonds for the construction of buildings and utilities.

Palatine's village president and Palatine's director of community development each testified that Palatine has always regarded Baybrook as a PUD "in fact." The director of community development, Robert T. Rudd, also stated that in most circumstances the village encourages developers to apply for PUD status rather than to develop under the original zoning. That policy reflects Palatine's desire to exercise greater control over large developments than is available under traditional zoning ordinances.

In May 1978, Baybrook's developers made a formal application to Palatine in order to obtain official designation as a PUD. No ordinance designating Baybrook as a PUD was ever enacted. In 1979, after this litigation had commenced, the height ordinance was enacted. That ordinance would effectively preclude development of Baybrook according to the original site plan unless Baybrook is regarded as a PUD.

Although the parties' discussion of the "vested rights" exception to the general rule that a landowner has no right to a continuation of favorable zoning has been confined to the applicability of that exception to the Flood Plain ordinance, we regard that exception as equally applicable to the issue of whether the landowners had a vested right to the issuance of building permits for Phases II and III despite the recently adopted height ordinance and Baybrook's lack of official PUD status.

■ A vested right in the issuance of building permits by a municipality arises where the landowner makes "any substantial change of position, expenditures or incurrence of obligations occurring under a building permit or in reliance upon the probability of its issuance." *People ex rel. National Bank v. County of Cook* (1965), 56 Ill. App. 2d 436, 442, 206 N.E.2d 441.

Palatine issued building permits for Phase I in 1972, pursuant to its 1971 approval of the original three-phased site plan. By 1974, almost all of the Phase I construction was completed, including on-site improvements benefitting the entire development and costing over $500,000. By late 1978, all the Phase I units were sold, and applica-

tion was made for permits to build the rest of the development. Palatine contends that the landowners acquired no vested rights to the issuance of building permits that would allow them to execute the original site plan. It can hardly be argued that the landowners did not make substantial expenditures in reliance on the issuance of those permits. Palatine contends, however, that the lapse of four years between the time that Phase I was completed and the time that Phase II and III permits were applied for indicates that the landowners abandoned their plans to develop the property and thereby lost any vested rights that they may have acquired. This contention ignores the fact that the original plan of development calls for construction of Phase II only when the units in Phase I are sold. Although it took longer than the landowners had originally contemplated to sell the Phase I units, the landowners were following, rather than abandoning, the development plan when they waited until the units were sold before applying for the permits.

We regard Palatine's approval of the original site plan, the issuance of building permits for Phase I, and the continuing treatment of Baybrook as a PUD "in fact" as the type of affirmative acts of public officials upon which a landowner is entitled to rely. A finding that a landowner has acquired a vested right to the issuance of building permits is particularly appropriate where, as here, public officials actively encourage a landowner to change position or incur expense in reliance on such acts. (See *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 522-24, 377 N.E.2d 21.) We also note that in 1978, Palatine received the landowners' application for official PUD status. In 1979, after this litigation had commenced, Palatine's height ordinance was adopted. Palatine now contends that that ordinance is applicable to Baybrook because Baybrook is not now, and never was, a PUD, and because the landowners have no vested right to complete the original site plan. In *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 190 N.E.2d 364, our supreme court stated that:

> "Where an individual or corporation expends substantial sums relying on the then existing zoning and zoning ordinances and proceeds to seek a permit in compliance with them, it would be a grave injustice to allow municipal officials to hold up action on issuance of a building permit until an amendatory ordinance could be passed changing the standards to be met so that a permit formerly lawful would now not be issued due to an abrupt change in the law." 27 Ill. 2d 570, 577.

In the instant case, the landowners had no reason to expect that they would not be granted official PUD status when they applied

for it in 1978, and they had no reason to believe that the height ordinance would be adopted in 1979 and applied to Baybrook in order to deny the building permits for the completion of a development plan that had been approved by Palatine several years before. Palatine cannot be allowed to use its refusal to treat Baybrook as a PUD under its 1979 PUD ordinance to deny building permits for the completion of the development. We hold that the landowners have a vested right to complete Baybrook in accordance with the original site plan, and that Palatine's height ordinance cannot be applied to the development to divest that right.

We therefore affirm the circuit court's order requiring Palatine to issue building permits for Phases II and III, and remand this case to the circuit court for consideration of the issues that were left unresolved by its judgment order, particularly the issue of whether a taking has occurred which requires an award of just compensation.

For the reasons expressed herein, the circuit court of Cook County's interlocutory order granting injunctive relief as to the application of the Palatine height ordinance and the issuance of building permits for Baybrook is affirmed and the cause remanded for consideration of the issues left undecided by the trial court.

Affirmed and remanded with directions.

DOWNING and HARTMAN, JJ., concur.