THE CITY OF CHICAGO, Plaintiff-Appellee v. IRENE RAGO *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—88—1414

Opinion filed September 1, 1989.

Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago (Vincent F. Di-Piero, of counsel), for appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an appeal from an order holding the defendants in contempt and fining them for failure to comply with a previous court order.

The plaintiff, City of Chicago, filed a complaint against the defendants on October 22, 1984, seeking to enjoin them from operating a crematory inside a garage without a permit and to require them to restore the garage at 2419 West Erie Street in Chicago to its original condition. The defendants were holders of the beneficial interest in the land trust that held title to the property. The defendant, Louis Rago, operated a funeral parlor at 624 North Western Avenue across the street from the garage and used the garage "as part of [its] business."

On October 31, 1984, the judge enjoined the defendants from performing cremations. The order provided that the "status quo of the subject premises shall remain in full force and effect and that there shall be no use of or work on the crematorium until such further order of the court."

The matter was continued pending the outcome of a related zoning case in which either the defendants or others were seeking to obtain a legal right to maintain a crematory in the garage.

On September 21, 1984, the Zoning Board of Appeals gave authorization for the installation and usage of a crematory in the garage. The circuit court of Cook County upheld the Zoning Board's decision on November 8, 1985. The appellate court later reversed the trial court in a Rule 23 order and remanded the matter to the Zoning Board of Appeals. On October 17, 1986, the Zoning Board ruled that the crematory could not be operated on the defendants' property because it violated the city zoning ordinance.

The parties returned to court on January 7, 1987, and the judge continued his previous order enjoining the defendants from operating the crematory and further ordered an interior inspection of the garage before the next hearing date.

At the next hearing on January 21, 1987, the city inspector testified that he conducted his inspection on January 13, 1987, and found that the crematory equipment remained a part of the garage. A stack was still attached to the roof of the garage, and the gas lines were still connected to the furnace. The judge held that everything in the garage that was part of the crematory had to be removed and the

building had to be restored to its previous condition. He found the defendants guilty on count I of the city's complaint, fined them $1,000 and entered a permanent mandatory injunction which in part required them:

"To disconnect all furnace equipment, to remove all crematory furnaces and equipment including the stack and necessary appurtenances from the subject premises and to restore the building to its original condition, *IMMEDIATELY* as soon as possible." (Emphasis in order.)

The order also provided that the court would reserve jurisdiction for the purposes of enforcement, modification or termination of the injunction. The defendants' motion to vacate the fine was continued.

During the hearing the defendant's attorney told the court that his client did not want to keep the furnace in the garage and that it was his client's wish to move it. He also informed the court that he had told the corporation counsel before the hearing that his client had no problem with moving or disconnecting the furnace. He said that his client's problem was that it would take some time to relocate the piece of equipment, which weighed in excess of three tons. (The evidence later established that the furnace weighed 11 tons.) He mentioned a time span of a "few months" and a "couple of months." The assistant corporation counsel told the court that he would agree to a 60-day extension to permit the defendants to remove the furnace. The court continued the case until March 25 and ordered another interior inspection before that date.

At the hearing on March 25, 1987, the inspector testified that the furnace remained in the garage. However, the gas lines and stack on the roof had been disconnected.

Louis Rago, one of the defendants, testified that he was not the owner of the crematory and that the owners were looking for sites on which to relocate the furnace. The owners were attempting to sell the furnace in the event they could not relocate it. They were encountering difficulties because of the bad publicity the crematory had received; however, they did want to relocate it and did not want to store it in the garage. He explained that the stack had been disconnected, but due to its size and the weather conditions it remained on the roof. The judge fined the defendants an additional $1,000 for noncompliance with the terms of his injunction and continued the case for three weeks. The defendants' motion to vacate the new fine and their previous motion to vacate the fine entered at the January 21, 1987, hearing were continued.

At the next hearing on April 23, 1987, the inspector testified that

the stack had been removed from the roof, but the furnace remained in the garage.

Rago testified that there was no reason why the furnace could not be moved. The problem was that he had no place to put it. He had been refused storage of the furnace in Melrose Park two weeks before the hearing. He had been talking to the owner of a crematory operation in either Libertyville or Mount Prospect who evidenced an interest in buying the furnace.

The judge expressed an opinion that the city Department of Streets and Sanitation could probably get the furnace out within 48 hours, then put it on a truck and take it to a city lot if the defendant was having trouble removing it. The attorney for the defendant told the judge that they were waiting for a purchaser. The judge responded as follows:

"I think we can arrange for the defendants, for the Streets and Sanitation, on the order of court, to remove that and put that in one of its facilities and store it. Of course, the cost of that will have to be borne by the defendants. Now if it comes to that, then it will be done. I want to give the defendants here an opportunity to remove it pursuant to these orders of court without the necessity of bringing in the Department of Streets and Sanitation into the picture at all. I think there must be some place it can be stored, as large of an area as we have in Chicago and its environs. I'm sure there's some storage facility that will accept it."

The judge fined the defendants an additional $1,000 for noncompliance with the prior injunction order.

At the next hearing on May 21, 1987, the inspector testified that an appointment had been arranged with the defendants for the previous day at 3 p.m., but no one answered the bell, and he was unable to gain access for his inspection. The defendants' attorney told the judge that the owners were still attempting to sell the furnace. The judge told the defendants' attorney that he should get a truck, take the furnace out and store it. He said that he was sure that there were some warehouse facilities available for storage. For the first time the defendants' attorney expressed disagreement with the court's injunction order of January 27, 1987; but he did not express the reasons for his disagreement.

The next hearing was held on July 9, 1987. The defendants' attorney told the judge that it was his understanding that the owners of the crematory had entered into a contract to relocate the furnace. The case was continued to September 10, 1987.

On September 10, 1987, the inspector testified that his inspection the previous day revealed that the furnace had not been removed from the garage. Rago once again stated that bad publicity was to blame for the owners not being able to sell or relocate the furnace. When the court asked why the furnace had not been removed pursuant to his order, Rago said that there was an ordinance pending before the city council which, if passed, would allow the owners of the crematory to move it from its present location to the funeral home.

The judge found that the defendants were acting in direct violation of his order to remove the furnace entered on January 21, 1987, and held that their noncompliance constituted indirect contempt. He levied a $400-a-day fine against all the defendants until there was full compliance with his order. He ordered another inspection of the premises to take place on September 23, 1987, and continued the matter until September 24. On September 22, the Chicago city council defeated the proposed crematory ordinance.

The next hearing was held on October 1. The inspector testified that the furnace was gone. Rago, who had become an owner of the crematory since the last hearing, testified that the moving company which took the furnace out on September 21, 1987, brought four trucks to do the job and that they placed the 22,000-pound single-piece unit on a flatbed truck belonging to another company. He did not have the names of the companies that had been hired to move the furnace. The furnace was removed the same day that he testified concerning a zoning ordinance change. A representation was made to the court that the city council vote was at 11 a.m. and the furnace was removed at 12:15 p.m.

The judge held that the defendants had purged themselves of the contempt; however, the daily fines totalling $4,400 for the period from September 10 until September 22, 1987, would stand as well as the accrued fines totalling $3,000. On April 7, 1988, the judge vacated the $1,000 fines entered on March 25 and April 23, 1987. He denied the motion to vacate the $1,000 fine he entered on January 21, 1987, and the $4,400 contempt fine based on the noncompliance of the defendants from September 10, 1987, to September 21, 1987.

The defendants appeal from the order of January 21, 1987, the contempt order entered by the court on September 10, 1987, and the October 1, 1987, order imposing $4,400 in fines. The notice of appeal was filed on May 6, 1988.

■ The defendants' appeal from the order of January 21, 1987, will be dismissed because the notice of appeal, filed May 6, 1988, was not timely filed. The order of a permanent mandatory injunction was

final and appealable on January 21, 1987. See *People v. Mulgrew* (1974), 19 Ill. App. 3d 327, 311 N.E.2d 378.

During oral argument, this court raised the question of the appealability of the January 21 order, *sua sponte*, which we have the right, if not the obligation, to do. (*Ben Kozloff, Inc. v. Leahy* (1986), 149 Ill. App. 3d 504, 501 N.E.2d 238.) The attorney for the defendants expressed awareness of the cases which have held that orders reserving jurisdiction for purposes of enforcing the order are not thereby rendered unappealable. (See, *e.g.*, *Village of Palatine v. La Salle National Bank* (1983), 112 Ill. App. 3d 885, 445 N.E.2d 1277.) He argued that such cases are not applicable because the order here retained the power to modify or to terminate the injunction as well as to enforce it.

The jurisdiction to enforce an injunction is inherent and is not dependent on an express reservation of jurisdiction in the order. (*McCall-Bey v. Franzen* (7th Cir. 1985), 777 F.2d 1178.) There is no reason for a different rule with regard to the power to modify or vacate an injunction. An injunction may be modified or dissolved when the court finds that the law has changed or that equity no longer justifies a continuance of the injunction. (*Flynn v. Kucharski* (1972), 53 Ill. 2d 88, 290 N.E.2d 1; *People ex rel. Illinois State Dental Society v. Norris* (1979), 79 Ill. App. 3d 890, 398 N.E.2d 1163.) We hold that the express language of the order here gave the court no power that it did not inherently possess and was surplusage; and that the language of the order expressing a retention of jurisdiction did not render it unappealable. Therefore, the appeal from the order of January 21, 1987, is dismissed.

■ The defendants' appeal from the order finding them in indirect contempt of court is based solely on their contention that the judge abused his discretion.

The defendants concede that they could have done within days after the order was entered what they ultimately did. The physical removal of the furnace was accomplished within hours; it was placed on a truck and taken to a storage area. We note that the physical removal took place less than two hours after the city council dashed the defendants' last hope by voting against the zoning change. Before that the judge had expressed a willingness to have the City of Chicago Department of Streets and Sanitation assist in the removal and storage of the furnace. His offer met with no response by the defendants, no doubt because of the judge's caveat that the removal and storage would be done at the defendants' expense.

It is a fair inference from this evidence that the defendants' deci-

sion to refrain from obedience to the judge's order was made advisedly and that the defendants knowingly refrained from obedience until every last avenue of possible relief had been travelled.

In our judgment the record displays exemplary patience on the part of the trial judge and supports the exercise of his discretion. (See *City of Chicago v. Chicago Fire Fighters Union, Local No. 2* (1981), 99 Ill. App. 3d 583, 425 N.E.2d 1071.) The orders finding the defendants guilty of contempt and the fine entered on those findings of contempt are affirmed.

Orders affirmed.

McNAMARA and LaPORTA, JJ., concur.