(No. 32678.—

HANNIFIN CORPORATION, Appellee, *vs.* THE CITY OF BERWYN, Appellant.

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

JOSEPH E. SERHANT, City Attorney, of Berwyn, and THOMAS A. MATTHEWS, and BYRON S. MATTHEWS, of Chicago, for appellant.

TAYLOR, MILLER, BUSCH & MAGNER, of Chicago, (JAMES J. MAGNER, and WHITNEY CAMPBELL, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook County holding two amendments to a zoning ordinance of the city of Berwyn invalid as to all but the north-

erly 100 feet of a 14½-acre tract of land owned by the Hannifin Corporation, plaintiff-appellee. The original suit of the Hannifin Corporation, hereinafter referred to as the company, sought an injunction against the city of Berwyn, defendant-appellant, hereinafter referred to as city, to restrain the enforcement of 1939 and 1951 amendments to the city's zoning ordinance as applied to the company's property and asked for a declaratory judgment holding said amendments invalid insofar as they restricted the use of the company property to residential purposes. The decree of the lower court declared the city's amendments unconstitutional and ordered them removed as a cloud from a portion of the company's property. The city has appealed and the company has also appealed for the reason that it contends the decree should have removed the amendments as a cloud from all of its property.

The decree was based upon the findings and recommendations of the master in chancery of the lower court, who heard the evidence. It, *inter alia,* found that the company purchased four parcels of land constituting a unified tract containing approximately 14.6 acres of vacant land on or about June 1, 1945. All the land in question is situated within the corporate limits of the city. This property is bordered on the east by industrial property, zoned for industrial use by the town of Cicero, is bounded on the southeast by the Chicago, Burlington and Quincy railroad and on the southwest by the Illinois Central railroad, on the west by the Nerad Coal Company (located on a tract which was and still is zoned for industrial use by the city,) and on the north by residential properties. The trial court also found that this property is characterized as industrial property by its surrounding uses and its desirability as an industrial site because of its location in respect to the railroads and is not characterized as residential property because of its proximity to residential property to the north; that its value for industrial use is ap-

proximately $225,000 and for residential use is approximately $50,000; that on September 25, 1923, the city passed a general zoning ordinance which zoned the property in question for industrial use (with certain exceptions not here pertinent); that in August, 1939, the city amended this ordinance to the extent that the property in question was changed from industrial to Class "A" residential use, restricted to single-family dwellings, churches, public schools, libraries, farm or truck gardens, private clubs other than hotels, hospitals, boarding houses and outdoor nurseries; that in February, 1951, the city further amended this ordinance to the extent that this property was changed to class "B" residential use, limiting it to two-family apartment buildings with one apartment over the other, private clubs not used for hotel purposes, boarding or lodging houses, institutions of an educational, philanthropic or eleemosynary nature, nurseries and greenhouses; that the city zoning ordinance amendments restricting the company property to residential uses are capricious, arbitrary and unrelated to the public morals, safety and general welfare; that the enforcement of said amendments would deprive the company of its property without due process of law.

The city here contends that the amending ordinances passed by it in 1939 and 1951 are valid and now urges a reversal of the lower court's decree.

The power of a municipality to enact and enforce zoning ordinances regulating the use of land and buildings within its territorial limits is based chiefly on the language found in section 73-1 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1951, chap. 24, par. 73-1.) This section provides, in part: "To the end that adequate light, pure air, and safety from fire and other dangers may be secured; that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, and

that the public health, safety, comfort, morals, and welfare may otherwise be promoted, the corporate authorities in each municipality have the following powers:" (here follows an enumeration of the powers).

We have examined the record, including the various plats, photographs, diagrams, reports, etc. and find that the evidence in this case established the following facts: The company purchased the tract in question after being informed that it was zoned for industrial use and approximately three months after date of purchase learned of the 1939 amendment. (The city stipulated as to the truth of this fact.) The rezoning accomplished by the 1939 amendment singled out the property of the company in addition to one other tract but did not change the zoning of any other city property already zoned for industrial use. The highest and best use of the land for industrial use has a value of approximately $225,000, whereas it is only worth approximately $50,000 for residential use. The purchase price was $84,474.40. The company sells and manufactures regulating and control valves, hydraulic and pneumatic cylinders, presses and noiseless riveting machines. It does not use foundry or plating or forging hammers; its operations create no odors, dust, gas or fumes. The location of this vacant tract in respect to the railroads and other industrial uses is not disputed and it is apparent that it lies in a pocket surrounded by industrial uses on three sides. In Cicero, immediately to the east, extending two blocks east and one block north, the property is zoned for industrial use, and is used industrially by several large companies. The Chicago, Burlington and Quincy railroad forms the southeast boundary of the property, containing five tracks all at grade. Three of these tracks are main tracks leading to the Chicago Terminal. The other two are switch and freight tracks leading to the east and west bound classification freight yards of this railroad located immediately to the east of this property and in Cicero. In addition to the

102 scheduled passenger and 23 freight trains every day, there is a great deal of freight movement in the making up and switching of freight trains.

The Illinois Central elevated railroad right of way forms the southwest boundary of the property. The tracks of the Illinois Central pass over Ridgeland Avenue and the tracks of the Chicago, Burlington and Quincy railroad. There are six scheduled passenger and eight freight trains daily on the Illinois Central railroad. Ridgeland Avenue forms the west boundary of the company property and is a paved county highway running through the city; a bus line is operated on this avenue. Directly across Ridgeland Avenue is located a coal yard consisting of an office structure, coal handling equipment and bins, together with a switch track into the coal yards from the Illinois Central railroad. This coal yard property and the property to the north thereof extending beyond the northerly boundary of the property in question and running west. for approximately one quarter of a mile to Eastern Avenue and bounded on the south by the Illinois Central railroad is and has been zoned for industrial use since the adoption of the original zoning ordinance in 1923.

West Twenty-ninth Street is the north boundary of this property. Only one half of this street has been dedicated and it is not paved. The area to the north of Twenty-ninth Street is residential, improved with one and one-half story residences, nearly all of which were constructed between 1923 and 1939, during which period the property in question was zoned for industrial uses. Few homes have been built in recent years along Twenty-ninth Street. There are approximately 100 houses in the area between Ridgeland and Lombard and Twenty-eighth and Twenty-ninth Streets, being the block north of the property in question. This area is divided into four blocks by three streets which end at Twenty-ninth Street. These houses face their respective streets and do not overlook the property in question or

Twenty-ninth Street. There are also about 34 vacant lots in the area. To the south of the company property are industrial uses such as coal yards and coal silos, a garage and body repair shop, gas station, etc. These are separated from the company property by the Chicago, Burlington and Quincy tracks. The property on both sides of the Illinois Central railroad was zoned industrially for a distance of three-quarters of a mile, being approximately three fifths the distance across the city. The company property was included in this original zoning for industrial use.

Various witnesses testified for both the company and the city in respect to values and the highest and best use of this property. The substance of the testimony of the witnesses both for the company and the city, (including experts in planning, zoning, building, developing and selling of real estate) was that the highest and best use of the property in question was either industrial or residential, depending upon for whom the witnesses testified. The undisputed evidence did, however, reveal that a 20-acre tract of land three-quarters of a mile directly east of the property in Cicero had recently been purchased by a printing press company for $20,000 an acre. The master carefully considered all this testimony, together with all other items of evidence in the case, and concluded that the property in question is characterized as industrial property by its surrounding uses and its desirability as an industrial site, and on this basis is founded the lower court's decree.

The inquiry of this court is directed to the question as to whether or not the amending ordinances are a reasonable exercise of the city's police power. Assuming that the highest and best use of the company property is industrial, can the city change it to residential? The zoning powers of municipalities, of necessity, are limited. It is not within the power of any municipal body to execute into law a rule or classification that is unreasonable, capricious or arbitrary. A city however can, and in many instances should,

make zoning changes when it promotes the general welfare. In each case the problem resolves itself into a weighing of the equities. Each side apparently has good and meritorious argument to advance in its behalf. This court must therefore carefully examine the facts of each case, as it is manifest that the pertinent rules of law must be applied in accordance with the facts of each particular case. Every owner has the right to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. This privilege is both a liberty and a property right. (*Village of LaGrange* v. *Leitch,* 377 Ill. 99.) And as stated in *Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138, this right existed before the adoption of the constitution and is guaranteed by that instrument. This right, as above stated, is subject to a valid exercise of the police power, which exercise is valid only when it bears a reasonable relation to the public health, comfort, morals, safety and general welfare. This court has no right to question legislative policy and it is not a matter of a few individuals' gain or loss, for that cannot stand in the way of public welfare, the latter not being susceptible to being impeded or thwarted by a private loss which is incident to the exercise of the police power. (*Hadacheck* v. *Sebastian,* 239 U.S. 394.) The presumption of validity obtains in respect to these two zoning ordinance amendments and it must be affirmatively and clearly shown that they are unreasonable and confiscatory, as claimed, as they will not be held unreasonable where there is room for a fair difference of opinion on the question. (*Wesemann* v. *Village of LaGrange Park,* 407 Ill. 81.) To sustain the validity of such zoning enactments, there must be a real and substantial relation to the public health, safety, morals or general welfare. *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321.

Among the particular facts and circumstances to be taken into consideration, in determining whether a pur-

ported exercise of the police power is so unreasonable and confiscatory as to constitute an unlawful invasion of private rights, are the character of the neighborhood, the zoning classification and use of nearby property, the extent to which property values are diminished by the particular restrictions involved, and the gain to the public, compared to the hardship imposed on the individual property owner. (*Galt* v. *Cook County,* 405 Ill. 396.) The fact that much of the contiguous industrial use is in adjoining Cicero is of no consequence, as it is a question of existing conditions and not of geographical and territorial limits or of the powers of neighboring municipalities. *Forbes* v. *Hubbard,* 348 Ill. 166.

It conclusively appears from the evidence in this case that the company property is contained in a pocket of industrial uses of a fixed and settled character; that enforcement of the amendments in question would be highly destructive of value; that very little good would result to the general public or the general welfare of the city by such enforcement; that no gain to the public would result compared to the hardship imposed. As tested by the cited authorities, the city's amending ordinances of 1939 and 1951 complained of are therefore manifestly unreasonable, arbitrary and capricious. They are unconstitutional because of their confiscatory effect and should be removed as clouds upon the entire parcel of the company property.

For the foregoing reasons, that part of the decree of the superior court of Cook County finding the 1939 and 1951 zoning ordinances of the city of Berwyn void and enjoining enforcement thereof is affirmed; and that part of said decree limiting its effect only to a portion of the tract of land in question is reversed and the cause is remanded, with directions to enter other necessary orders in accordance with the views expressed herein.

*Affirmed in part and reversed in part*
*and remanded, with directions.*