Jack M. Polivka et al., Plaintiffs-Appellees, v. The County of Cook, a Body Politic and Corporate, Defendant-Appellant.

Gen. No. 50,351.

First District, Third Division.

February 3, 1966.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division and Donald J. Veverka, Assistant State's Attorney, of counsel), for appellant.

Haskins, Maguire & Haskins, of Chicago (Robert E. Haskins and C. W. Eckert, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a declaratory judgment proceeding the trial court found that defendant's zoning classification of plaintiffs' property as R–4 (single family residential) was arbitrary and discriminatory and that plaintiffs should be allowed to develop their property with a gasoline station and stores, as permitted in a B–2 zone.

The subject property is located on the southwest corner of 55th Street and Wolf Road on the outskirts of the City of Chicago. It is presently improved with a small

delicatessen style restaurant called the Cupboard. Adjoining plaintiffs' lot to the west is an animal hospital, a single family residence and a grocery-poultry store. The hospital and store were made nonconforming uses when the area was comprehensively zoned R–4 in 1960.

To the west of the store, less than 100 yards from the property here in question, is an area of 60,000 square feet owned by a realtor who is engaged in the development of single family residences in the neighborhood. That property is improved with a residence type structure housing a real estate office and was originally included in the area zoned R–4. The realtor, however, obtained a rezoning of the site to a B–3 classification (general business usage). That would not only permit the realtor to establish a gasoline station in the area, but would also permit uses lower than B–2, the classification the plaintiffs seek and which the trial court allowed. The alleged purpose justifying this diverse classification was to enable the realtor to maintain his real estate office permanently as a buffer between the nonconforming business uses fronting on 55th Street and the single family residences which were to be developed on tracts to the south, also owned by the realtor.

Plaintiffs contend that defendant discriminated against them by refusing their request for a B–2 usage, while granting a B–3 classification to the realtor, whose property was situated within 100 yards of theirs. Plaintiffs note that justification for the commercial zoning of their property is far greater than that supporting the rezoning of the realtor's land. Plaintiffs' lot, on the corner of a heavily traveled intersection, is already improved with a nonconforming use and is located among other business uses. The realtor's lot, in comparison, is located in the middle of the block and was undeveloped at the time of the rezoning. Plaintiffs allege that the erection of a gasoline station on the corner will have little

379

effect on the neighborhood to the southwest, whereas the improvement of the realtor's lot to the extent of the permitted usage would discourage future residential development on adjoining lots.

■ Plaintiffs also allege that the action of the defendant was unreasonable in that it penalized plaintiffs without substantially benefiting the community. Testimony was introduced tending to show the undesirability of residential development on plaintiffs' property due to the adjacent animal hospital and the possibility of a gasoline station or other commercial usage on the realtor's land. The existence of a contract of sale of plaintiffs' land for $110,000, contingent upon the owners securing permission for usage as a gasoline station, established the value of the lot if zoned commercially. Plaintiffs' expert placed the value of the property as presently zoned at $24,000, which figure the defendant did not dispute. Although the element of property values is not controlling in determining the validity of a zoning ordinance, the loss to the property owner caused by the ordinance should be justified by substantial benefit to the public welfare. Krom v. City of Elmhurst, 8 Ill2d 104, 133 NE2d 1.

Defendant argues that the zoning is justified because the area is "uniformly zoned and used, with a few minor exceptions, for single family residential purposes," that the realtor has erected a structure substantially conforming to the character of the emerging neighborhood and has shown no inclination to alter or increase the usage of his property.

■ The realtor testified that the reason for rezoning his plot was to facilitate the sale of homes. On cross-examination he said that his objections to a gasoline station were purely economic. It is a fair assumption that when economics so dictate the realtor will construct a gasoline station or other structure permitted by the B-3 classification. This gives the realtor a rare and valuable

advantage over plaintiffs and other property owners in the area, in that he controls the only land which may be developed as a gas station or other enterprise within the broad provisions of the B–3 classification. He can let the property remain vacant and watch the demand increase for a gas station or other business within the B–3 classification and sit secure in his monopoly until he thinks the time has come to sell. A zoning ordinance, although reasonably designed to protect public health, safety or welfare, cannot in such guise effect an arbitrary discrimination against the class upon which it operates by omitting from its coverage properties similarly situated. Ronda Realty Corp. v. Lawton, 414 Ill 313, 111 NE2d 310; City of Chicago v. Sachs, 1 Ill2d 342, 115 NE2d 762; Frost v. Village of Glen Ellyn, 30 Ill2d 241, 195 NE2d 616; Dalkoff v. City of Rock Island, 17 Ill2d 342, 161 NE2d 292; Colvin v. Village of Skokie, 54 Ill App2d 22, 203 NE2d 457. In the Colvin case last cited, the plaintiff sought permission to build a gasoline station on his lot, which was zoned single family residential. The request was denied despite the granting of a variation for identical purposes to the adjoining landowner. This court held the ordinance discriminatory and void as to the plaintiff's property, reasoning that the spot zoning indulged in by the village destroyed the uniformity of surrounding uses and "would undermine its [the village's] opposition to future petitions by other land-owners for the same favorable variation."

The defendant cites cases for the proposition that a zoning ordinance is not discriminatory merely because nearby properties are zoned to permit different uses. In Mundelein Estates, Inc. v. Village of Mundelein, 409 Ill 291, 99 NE2d 144, the village zoning ordinance established uniform districts and prescribed certain uses for each district. A property owner sought a declaration that the ordinance was unreasonable as applied to his property because of the commercial uses allowed in an adjoining

district located across the street. The Illinois Supreme Court said that the fixing of zoning lines is a matter of legislative discretion and "necessarily results in a different classification on either side of the boundary line," but the existence of such difference in itself does not make the ordinance invalid.

So in Ryan v. City of Elmhurst, 28 Ill2d 196, 190 NE2d 737, a property owner was denied permission to improve his land with a commercial structure where the entire area was zoned and developed residentially, despite the presence of nearby business uses across the zone boundary. *Accord,* Bennett v. City of Chicago, 24 Ill2d 270, 181 NE2d 96; Reeve v. Village of Glenview, 29 Ill 2d 611, 195 NE2d 188.

██ In each of the foregoing instances, the zoning body determined that a portion of the community was to be improved commercially while the remainder was to be restricted to residential development. Landowners within the areas zoned residentially *were treated similarly* despite the necessary proximity of some to the business districts. What distinguishes those situations from the instant case is the discrimination present here in the *rezoning* of one piece of property for commercial usage *at the owner's request,* while denying permission to plaintiffs to develop their property with a less intensive use, notwithstanding the fact that the favored owner's property was in the middle of the block on property substantially undeveloped, while plaintiffs' land was located at a heavily trafficked intersection amid nonconforming business uses.

The judgment is affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.