LA SALLE NATIONAL BANK, as Trustee under a certain Trust Agreement, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF EVANSTON, Defendant-Appellant.

(No. 55317; )

First District (3rd Division)—December 28, 1972.

*Modified upon denial of rehearing March 15, 1973.*

Jack M. Siegel, Corporation Counsel, of Evanston, for appellant.

Pedersen & Houpt, and Morgan, Lanoff, Cook & Madigan, both of Chicago, (Richard V. Houpt, James K. Stucko, and Samuel M. Lanoff, of counsel,) for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court as modified on the denial of the petition for rehearing:

Plaintiffs, La Salle National Bank, as trustee, and the James Investment Corporation, as beneficial owner of certain real estate located in Evanston, brought this declaratory judgment action against the defendant, City of Evanston, seeking a declaration that defendant's zoning ordinance was unconstitutional and void as applied to plaintiffs' property. After hearing evidence, the trial court entered judgment declaring the height and density restriction of defendant's zoning ordinance to be invalid as it prevented the plaintiffs from developing their property as proposed. On appeal defendant contends that plaintiffs failed to overcome the presumptive validity of the zoning ordinance in question; that the zoning ordinance as applied to the subject property is a valid exercise of legislative authority; and that plaintiffs failed to exhaust their administrative remedies before bringing the instant action.

The subject property is located at 1746 Hinman Avenue, on the southwest corner of Clark Street and Hinman in Evanston. The property is vacant, consists of approximately 52,800 square feet, and is located almost equidistantly between the downtown business district, the Northwestern University campus and a public park facing Lake Michigan.

Plaintiffs purchased the property in 1952 for $50,000. At the time, it was improved with a single-family home and coachhouse, and was zoned R-1, a single-family use. Plaintiffs demolished the home in 1956 and the coachhouse in 1967. Prior to its demolition, the coachhouse was rented as two units at a total $300 monthly income.

In 1960, under a comprehensive amendment, the property again was classified as R-1. In 1968, plaintiffs, along with other owners of property on both sides of Hinman Avenue, sought a change of zoning from the R-1 classification to R-7, which would permit the erection of a 125 unit apartment building to a height of 85 feet. The Zoning Committee recommended that both sides of Hinman between Clark and Church Streets be reclassified R-5A. In 1969, the City Council amended the zoning ordinance by reclassifying only the west side of Hinman, including the subject property, to R-5A. Under R-5A, the property could be developed for multi-family use to a height of three stories with a maximum number

of 42 residential units. Plaintiffs brought this declaratory judgment action, and the trial court held that the zoning ordinance was void as it prohibited plaintiffs from erecting a structure containing 114 apartments 85 feet in height.

The west side of the block in which the subject property is located is zoned R-5A. Immediately south of the subject property is a single-family home with a coachhouse. Directly south of that is the Sigma Chi Foundation, national headquarters of a fraternity. South of that is the three-story University Club. No other buildings are on the west side of the block. On the east side of Hinman, still zoned R-1, are seven single-family residences and a building used by a church as a student religious center. The block to the east of these homes is also zoned R-1; however, it contains no single-family residences, but rather a sorority house, the Northwestern Training Institute and a B'nai B'rith Foundation Building.

The property immediately to the west, separated from the subject property by an alley, is zoned R-7. Immediately south of that property is a city parking lot, which occupies the remainder of the block, and is also zoned R-7. The block to the west of the subject property is also zoned R-7 and contains the public library, several institutions and an apartment building of the same height as that proposed by plaintiffs.

The first full blocks south of the subject property are zoned R-7 on both the east and west sides of Hinman. These contain, among other structures, hotels and apartment buildings with the same height and density as that proposed by plaintiffs. To the southwest of the subject property are business districts, including a bank 20 stories high.

The blocks north of the subject property are zoned U-2. A U-2 classification refers to dwellings owned or operated by a college or university. Such a classification permits buildings to a height generally of 35 and under certain circumstances of 50 feet. A density of residential units twice that permitted under R-5A, is allowed. These blocks to the north of the subject property consist primarily of businesses and offices related to Northwestern University, including classrooms, business offices, sorority house, chapel and school library.

Additionally, the following pertinent testimony was adduced at the hearing. Kenneth James, vice-president of the plaintiff beneficial owner, testified that plaintiffs proposed to erect a building 85 feet high with 114 apartments, including 18 one-bedroom apartments, 78 two-bedroom apartments, and 18 three-bedroom apartments. There would be 114 parking spaces provided, 85 of which would be indoors.

George Kranenberg, a planning and zoning consultant, testified for plaintiffs that in his opinion the highest and best use of the subject property was for multiple use under R-7. He based his opinion upon the

presence of contiguous business districts and upon the public and quasi-public uses related to the university. He stated that the remaining single-family residences in the area were out of character with the neighborhood, and that the proposed R-7 use would not depreciate those single-family residences.

James E. Wolfe, a real estate broker and appraiser, testified for plaintiffs that in his opinion the highest and best use for the property was R-7. Zoned as R-5A, the property had a value of $350,000, and, if zoned R-7, it would have a value of $790,000.

Wayne F. Anderson, City Manager of the City of Evanston, was called by the plaintiffs as an adverse witness under Section 60. He testified that the city had no current plans for developing the parking lot west of the subject property, but that the city did receive and consider proposals from several parties concerning development of the lot.

George Anton, an appraiser, testified for plaintiffs that the property, zoned as R-5A, had a value of $350,000, while, if zoned R-7, it would have a value of $1,000,000. He based his opinion upon the sale of similar multi-family dwellings in the area.

Richard Carter, defendant's Director of Planning, testified that in his opinion the highest and best use of the property would be as R-5A. He based his opinion on the use of the surrounding area and defendant's practice of grading downward the height of buildings from the center of the city to the lakefront. Carter also testified that defendant had no present plans to develop the parcel for development of the city parking lot, zoned R-7 and adjacent to the subject property. He further testified that, in his opinion, the plaintiffs' proposed use would be detrimental to the other property in the area, and would create traffic problems.

F. Gregory Opelka, an appraiser, testified for defendant that the single-family homes across the street from this property ranged in value from $40,000 to $70,000, and that the proposed use of R-7 would diminish their value from 5% to 10%. He also testified that the subject property had a value of $300,000 as presently zoned, and that it would be worth $550,000 to $600,000 if zoned R-7. Opelka further testified that the property was suitable for development under the present R-5A zoning.

Patrick W. O'Brien, an Evanston resident, a lawyer, a dealer in realty, and a member of the Southeast Evanston Association, also testified for the defendant. He explained that the Southeast Evanston Association is an organization dedicated to preserving the residential nature of Southeast Evanston. It was his opinion that the plaintiffs' proposed use of the subject property would be destructive of the residential character of the area.

William Lawrence, city planning and zoning consultant, testified that

the proposed R-7 use of the subject property would be detrimental to the area. He further testified that the present R-5A zoning of the subject property was a reasonable transition from the abutting R-7 and R-1 areas.

A determination of defendant's first two contentions, that plaintiffs failed to overcome the presumptive validity of the zoning ordinance and that the zoning ordinance as applied to the subject property is a valid exercise of legislative authority, requires a consideration of the same legal principles. Consequently, we will consider both arguments together. Moreover, both sides presented evidence that the highest and best use for the property was multiple family residential. The only point at issue between the parties is one of height of structure and density of use.

■■■ In an action to prevent the enforcement of a zoning ordinance as to a particular piece of property, the moving party faces the burden of proving by clear and convincing evidence that the application of the ordinance is arbitrary and unreasonable, and that it has no substantial relation to the public health, safety and welfare. (*Exchange National Bank of Chicago v. County of Cook*, 25 Ill.2d 434, 185 N.E.2d 250.) The enactment of the ordinance is always presumed to be valid. (*Jacobson v. City of Evanston*, 10 Ill.2d 61, 139 N.E.2d 205.) The presumption of the ordinance's validity, however, is overcome when the evidence shows a destruction of property value in the application of the ordinance and an absence of any reasonable basis in public welfare requiring the restriction and resultant loss. (*First National Bank & Trust Co. of Evanston v. County of Cook*, 15 Ill.2d 26, 153 N.E.2d 545.) In order to sustain the validity of zoning enactments, there must be a real and substantial relation to the public health, safety and morals or general welfare. (*Hannifin Corp. v. City of Berwyn*, 1 Ill.2d 28, 115 N.E.2d 315.) In *Polivka v. County of Cook*, 68 Ill.App.2d 377, 216 N.E.2d 221, this court, at p. 381, stated:

> "A zoning ordinance, although reasonably designed to protect public health, safety or welfare, cannot in such guise effect an arbitrary discrimination against the class upon which it operates by omitting from its coverage properties similarly situated."

The six familiar factors to be considered by a court in determining the validity of zoning were set forth by the Supreme Court in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65:

> "(1) The existing uses and zoning of nearby property;
>
> (2) The extent to which property values are diminished by the particular zoning restrictions;
>
> (3) The extent to which the destruction of plaintiff's property

values promote the health, safety, morals or general welfare of the public;

(4) The relative gain to the public as compared to the hardships imposed on the individual owner;

(5) The suitability of the subject property for the zoned purposes;

(6) The length of time the property has been vacant as zoned considered in the context of land development of the area in the vicinity of the subject property."

And in weighing these factors, primary importance should be given to the conformity of the zoning restrictions on the subject property with existing uses and zoning restrictions applicable to surrounding properties. *Guaranty Bank and Trust Co. v. City of Chicago*, 112 Ill.App.2d 378, 251 N.E. 2d 384.

■■ When the zoning classification of the subject property is viewed under the foregoing criteria and principles of law, we believe that the trial court correctly held that the presumptive validity of the ordinance has been overcome, and that the height and density restrictions of the R-5A classification, as applied to this property, were arbitrary and unreasonable and in no way promoting the public health, safety or welfare. In reaching that conclusion, we view the uses and zoning of the surrounding area as being of primary significance. The record, particularly the exhibits, reveals that the area has been found to be suitable for a blend of commercial, institutional and multiple family residential uses. In the block south of the subject property, the property is zoned R-7 and contains hotels and apartment buildings of the same height and density as plaintiffs' proposed use. Immediately west of the subject property, the land, including a parking lot owned by defendant, is zoned R-7. It is important to note that in the past defendant has considered proposals to have that property developed in the same manner as proposed by plaintiffs for the subject property. The entire block to the west of the parking lot is zoned R-7 and contains an apartment building, library and office. To the north of the subject property is a mixture of businesses and offices relating to the University. Although these buildings are restricted to 50 feet in height, a greater density per unit is permitted than in plaintiffs' proposed use. The block to the east of the subject property is zoned R-1, but contains a group of non-conforming uses, including a sorority house. Only across the street to the east of the subject property are there any single-family residences, and even on that street a student religious center is located. We believe that, when the uses and applicable zoning regulations in the surrounding area are thus examined, it becomes apparent that the height and density requirements imposed upon plaintiffs' property by the ordinance are unwarranted, and that plaintiffs' pro-

posed use would not change substantially the public welfare in the area.

■■ To show an ordinance unreasonable and arbitrary in its application, it is not necessary that the property be totally unsuitable to the use for which it is classified. It is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare. (*First National Bank and Trust Co. of Evanston v. County of Cook, supra.*) Defendant concedes in its brief that, if plaintiffs' proposed development were permitted, the subject property would have a value to two or three times greater than its present value. It argues, however, that plaintiffs' proposed use would cause considerable loss in value to the owners of the single-family residences to the east of the subject property. If Opelka's testimony of a 5% to 10% depreciation in value to those homes were accepted, the monetary loss to those owners would be significant. However, in light of the limited effect plaintiffs' proposed use would have on the area's general welfare and in view of the admitted substantial financial loss imposed on plaintiffs by the ordinance, the depreciation in value to those few single-family residences could not be controlling. Moreover, we find persuasive the testimony of plaintiffs' witnesses that the homes in question have been fully depreciated by the varied uses already permitted in the neighborhood.

■■ We find no merit in defendant's final contention that plaintiffs failed to exhaust their administrative remedies before seeking judicial review. Plaintiffs joined with the other owners in seeking to have the entire block of 1700 Hinman Avenue rezoned as R-7. The zoning committee recommended an R-5A classification for the entire block. The City Council approved an R-5A classification for the west side of the street only, including the subject property. Since the proposed zoning classification of R-7 was squarely before the City Council, it was not necessary for plaintiffs to again present that issue to the Council before filing suit.

For the reasons stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McGLOON, J., concur.