2023 IL App (1st) 221705-U

No. 1-22-1705

Order filed October 20, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOSH HENDERSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CH 05932 |
| | ) | |
| CITY OF CHICAGO DEPARTMENT OF | ) | Hon. Anna M. Loftus |
| BUSINESS AFFAIRS AND CONSUMER | ) | Judge presiding. |
| PROTECTION and MAYOR'S LICENSE | ) | |
| DISCIPLINE COMMISSION, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The commissioner of the Department of Business Affairs and Consumer Protection did not commit clear error by denying plaintiff a commissioner's adjustment to register two shared housing units, and the commissioner's failure to tender the final decision within the time provided by the ordinance did not render the decision invalid.

¶ 2    Josh Henderson, *pro se*, appeals the Department of Business Affairs and Consumer

Protection commissioner's denial of his application for a commissioner's adjustment to allow for

two additional shared housing units within a four-unit residential building. Henderson raises the

following issues: (i) whether the commissioner clearly erred in denying his application for an adjustment because the hearing officer improperly weighed the evidence presented; (ii) whether the delay in tendering the commissioner's report renders the decision void; (iii) whether Chicago Municipal Code Section 4-14-100 is unconstitutionally vague, an unconstitutional invasion of privacy, and an unreasonable property seizure; and (iv) whether Chicago Municipal Code Section 4-14-60(g) unconstitutionally levies excessive fines and authorizes warrantless searches. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     Josh Henderson owns two multi-unit properties in Chicago, one in which he lives, and the other, which is the subject of this appeal, at 1151 W. Waveland Avenue. Henderson applied to register unit 1 of 1151 W. Waveland as a "shared housing unit" with the Department of Business Affairs and Consumer Protection, so he could list it as a short-term rental on Airbnb. The commissioner of the Department denied Henderson's application because the Chicago Municipal Code prohibits registering shared housing units that are not the host's primary residence. Henderson applied for a commissioner's adjustment, which requires a petitioner to demonstrate that the unit will alleviate an extraordinary burden predicated on unique and unusual circumstances. Citing lost costs and rents lingering from the COVID-19 pandemic, Henderson received a commissioner's adjustment as to unit 1 and was permitted to list the unit as an Airbnb.

¶ 5     After receiving the adjustment, Henderson then applied to register two more units at 1151 W. Waveland, unit 2 and the garden unit. The commissioner denied these applications, and Henderson again applied for commissioner's adjustments as to both, presenting largely the same evidence of the lingering effects of COVID-19 on his business. The commissioner denied these adjustments, and Henderson appealed to the Mayor's Licensing Discipline Commission. After a

hearing, the commissioner affirmed the denials, finding Henderson had not demonstrated unique and unusual circumstances that created an extraordinary burden the adjustment would remedy.

¶ 6    Henderson sought administrative review from the circuit court. Henderson argued that because he presented identical evidence for all three applications, the decision to deny his latter applications where his former was granted demonstrates that the ordinance conferring authority upon the commissioner to make such determinations is unconstitutionally vague and leads to arbitrary results. Henderson also challenges the commissioner's weighing of the evidence and alleges that the commissioner tendered the decision 14 days later than prescribed by the ordinance, in violation of his constitutional rights. The circuit court affirmed the commissioner's decision. Henderson timely appealed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 7                                    II. ANALYSIS

¶ 8    Henderson provides much in the way of argument yet little in the way of supporting legal authority. Between the two briefs Henderson submitted, there appears to be only a single citation to case law: *Grayned v. City of Rockford*, 408 U.S. 104 (1972). Henderson cites the Supreme Court's policy considerations for voiding an unconstitutionally vague statute. Otherwise, Henderson argues multiple provisions of the Chicago Municipal Code violate state and federal constitutions, with reference to specific sections, but without supporting law or legal analysis. Henderson also asserts that his fourteenth amendment due process rights were violated when the hearing officer improperly relied on specific evidence in making her determination, and that the commissioner submitted the final decision 44 days after the hearing, in violation of Chicago Municipal Code section 4-14-100(c), and the state and federal constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.

¶ 9      The City contends that this appeal should be dismissed for Henderson's failure to cite legal authority. Ill. S. Ct. R. 341(h)(7). Alternatively, the City argues that Henderson's constitutional claims must fail for lack of standing. On the merits, the City argues that the commissioner's denial of Henderson's application was not clearly erroneous, because the commissioner properly determined an adjustment was not warranted, and the late tendering of the decision is not a basis for reversal.

¶ 10     Section 4-14 of the Chicago Municipal Code concerns shared housing units, defined in the code as small dwelling units rented for transient occupancy (e.g., Airbnbs). Chicago Municipal Code § 4-14-010 (amended May 25, 2022). Section 4-14-060(e) makes it unlawful to advertise or rent a shared housing unit in a two-to-four unit building unless such unit is the host's primary residence. Chicago Municipal Code § 4-14-060(e) (amended March 24, 2021). This primary residence rule will not apply to bar a host from listing or renting their unit if they apply for and receive a commissioner's adjustment as provided for in Section 4-14-100. Chicago Municipal Code § 4-14-100 (added June 22, 2016). If a host's application is denied, they may request a hearing to present "written submissions, witness testimony, argument, and documents regarding the application." § 4-14-100(c). The commissioner reviews applications for adjustments considering many factors, nine of which are listed in the ordinance "by way of example and not limitation." § 4-14-100(a)(2). Factors may include the number of units in the building subject to the adjustment, the degree the adjustment varies from the prevailing statutory limitations, and economic hardship to the applicant resulting from denial. *Id.* An adjustment may only be approved if the commissioner concludes that it would "eliminate an extraordinary burden on the applicant in light of unique and unusual circumstances," and the shared housing unit "would not detrimentally impact the health, safety, or general welfare of the surrounding property owners or

general public." *Id.* The commissioner is directed to provide a decision within 30 days of the conclusion of the hearing, which is final for purposes of judicial review. § 4-14-100(c). Section 4-14-030(c) provides that shared housing units deemed ineligible must be removed from listing platforms, like Airbnb, and failure to comply will result in a fine of $5000 per occurrence, where each day of noncompliance constitutes an occurrence. Chicago Municipal Code § 4-14-030(c) (amended March 24, 2021).

¶ 11    If the statute conferring power on an administrative agency adopts the Illinois Administrative Review Law, its provisions govern every action to review that agency's decisions. *Dubin v. Personnel Board of City of Chicago*, 128 Ill. 2d 490, 497 (1989). Section 4-14 of the Chicago Municipal Code does not adopt nor incorporate the Administrative Review Law, and therefore parties may seek administrative review through a writ of *certiorari* in the circuit court. *Id.* at 498. Though styled as a complaint for administrative review, the circuit court treated Henderson's pleading as the appropriate writ of *certiorari*.

¶ 12    Review under a writ of *certiorari* are virtually the same as under the Administrative Review Law, and we therefore review the determination of the agency, and not the circuit court below. *Id.*; *Landers v. Chicago Housing Authority*, 404 Ill. App. 3d 568, 571 (2010). The burden of proof is on the plaintiff in administrative proceedings. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33 (2006). The applicable standard of review on appeal depends on whether the question presented is one of law, fact, or a mixed question of both law and fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). The commissioner's factual findings are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). Questions of law are

reviewed *de novo*, and mixed questions of fact and law are reviewed under a clearly erroneous standard. *Id.* at 210-11. A decision is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id.* at 211 (quoting *AFM Messenger*, 198 Ill. 2d at 395). This appeal presents a mixed question of fact and law, where the issue is whether the rule of law was properly applied to the established facts. *Cinkus*, 228 Ill. 2d at 211.

¶ 13    Henderson argues that the commissioner improperly relied on certain evidence in denying his application. In paragraph 7 of the report, the commissioner found that Henderson had failed to establish the requisite unique or unusual circumstances necessary to qualify for an adjustment. In support of this finding, the commissioner referenced evidence Henderson presented of businesses, restaurants, and hotels in the vicinity of the 1151 W. Waveland property which created a greater burden on the neighborhood than his Airbnbs. The commissioner also referenced Henderson's testimony regarding a new construction in the area creating a burden on the neighborhood. Lastly, the commissioner relied on Henderson's testimony that he was not opposed to long-term rentals in the subject units. The commissioner's decision was based on the "totality of the exhibits and arguments" presented at the hearing.

¶ 14    Henderson asserts that the evidence referenced in paragraph 7 was not presented to establish the financial burden factor, even though, he claims, that was the only basis for the denial of his application. Henderson argues that the commissioner's declaration that the "totality" of the evidence supports the conclusion is no replacement for a specific recitation of what evidence actually underlies the decision.

¶ 15    Henderson's argument assumes that the commissioner was required to address each individual factor listed in the adjustment provision and refute the evidence presented as to each

factor independently. In reality, this section provides factors the commissioner "*may* consider," which are included "by way of example and not limitation." (Emphasis added.) § 4-14-100(a)(2). The commissioner is not required to consider every factor and may consider additional factors raised by the evidence before her on the particular facts of the case. The ordinance provides the primary question for the commissioner to consider:

> "Such an adjustment may be approved only if, based on a review of relevant factors, the commissioner concludes that such an adjustment would eliminate an extraordinary burden on the applicant in light of unique or unusual circumstances and would not detrimentally impact the health, safety, or general welfare of surrounding property owners or the general public." *Id.*

It was appropriate for the commissioner to consider evidence of the neighborhood's condition in coming to this conclusion. The commissioner's determination that Henderson did not establish unique or unusual circumstances was not clearly erroneous on the facts presented in paragraph 7. To the extent Henderson seeks a specific explanation that addresses the financial hardship factor, he need only look to paragraph 6 of the report, where the commissioner concluded that "acquiring equity, lost rent, tenants failing to pay, building maintenance, and lost revenue are ordinary and regular considerations and did not constitute unique or unusual circumstances[.]" It was within the commissioner's discretion to deny Henderson's application on any and all of the evidence presented, and the decision to do so was not clearly erroneous.

¶ 16    Henderson argues that considering testimony directed at one factor when adjudicating a different factor deprived him of procedural due process under the fourteenth amendment. U.S. Const., amend. XIV. To comport with procedural due process, administrative proceedings must provide a party with "a meaningful procedure to assert his claim before the deprivation or

impairment of a property right." *Snow v. Chicago Transit Authority*, 2022 IL App (1st) 201217, ¶ 54 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976)). A court will not find a deprivation of procedural due process absent a showing of substantial prejudice. See *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 435 (1990). Henderson fully presented evidence to support his claim before the commissioner; due process does not require the commissioner weigh that evidence favorably to the petitioner, or even in the manner he would prefer. Henderson received all the procedural due process to which he was entitled.

¶ 17    Henderson next argues that the commissioner violated the adjustment provision when the final decision was released 44 days after the hearing, instead of 30 days, as specified in the ordinance. Pertinent here is the phrase "The commissioner *shall*, within thirty days of the conclusion of the hearing, tender a decision ***." (Emphasis added) § 4-14-100(c). As the circuit court correctly noted, wherever the term "shall" appears in Title 4 of the Chicago Municipal Code, it is to be "construed as merely directory rather than mandatory." Chicago Municipal Code § 4-14-280(b). The distinction between mandatory and directory statutory language "simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." (Internal quotation marks omitted.) *In re M.I.*, 2013 IL 113776, ¶ 16 (quoting *People v. Robinson*, 217 Ill. 2d 43, 51-52 (2005)). Section 4-4-280(b) further states that failure to comply with such directory language will not "result in any loss of jurisdiction by the Commissioner." § 4-4-280(b). Therefore, the commissioner's failure to tender the final decision within 30 days does not necessitate reversal.

¶ 18    The foregoing issues are dispositive of this appeal. However, Henderson also challenged the constitutionality of the relevant ordinances for the first time in his writ of *certiorari* before the circuit court. Generally, issues or defenses not raised before the administrative agency will not be

considered for the first time on administrative review. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). Though an administrative agency lacks the authority to invalidate a statute on constitutional grounds or question its validity, asserting such a challenge on the record provides all parties an opportunity to present evidence to support or refute the challenge. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998). Administrative review is confined to the evidence offered before the agency, and therefore a party's right to question the validity of a statute is subject to forfeiture if such a right is not exercised during the administrative proceedings. *Carpetland*, 201 Ill. 2d at 397. Henderson's claims are forfeit for not being raised in the administrative proceedings. Nevertheless, we briefly address each in turn.

¶ 19     Henderson argues that the adjustment provision and the provision setting fines are unconstitutional. § 4-14-100; Chicago Municipal Code § 4-14-30(c)[1]. Specifically, Henderson claims the adjustment provision is unconstitutional for three reasons: (i) the provision fails to clarify what qualifies as a financial burden, rendering the provision unconstitutionally vague and open to arbitrary enforcement; (ii) the requirement to demonstrate a financial burden works an unconstitutional invasion of an applicant's privacy by implying a need to share sensitive and personal information; and (iii) the denial of his application would result in his losing equitable interest in his property, which he claims is an unreasonable property seizure. Henderson argues that the fine provision is unconstitutional because it imposes excessive fines in violation of state and federal constitutions. U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 6. The City argues in response that Henderson lacks standing to bring these constitutional claims because even if he

---

[1] Henderson cites this provision as Section 4-14-060(g), though his argument makes clear he intends to challenge the provision in Section 4-14-030(c). Section 4-14-060(g) was removed in 2020 by the Chicago City Council, and its provisions concerning penalty fines are now found in Section 4-14-030(c). Chi. City Clerk J. Proc. 20303, 20307 (September 9, 2020).

were successful in striking the challenged provisions, the primary residence rule would bar the relief he seeks: approval of his shared housing unit registration.

¶ 20    To establish standing in Illinois, a party must claim an injury that is "(i) distinct and palpable; (ii) fairly traceable to the defendant's actions; and (iii) substantially likely to be prevented or redressed by the grant of the requested relief." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). This court has previously considered standing based on the provisions at issue here. See *Mendez v. City of Chicago*, 2023 IL App (1st) 211513. In *Mendez*, the plaintiffs made similar arguments challenging the constitutionality of the adjustment provision on vagueness grounds. *Id.* ¶ 4. Specifically, like Henderson, the plaintiffs contended that the criteria in the ordinance provided no objective guidance to the commissioner when granting adjustments. *Id.* ¶ 22. In examining the ordinance and its legislative history in detail, *Mendez* concluded that the primary residence rule is severable from the adjustment provision. *Id.* ¶ 27 ("[T]he primary residence rule and its narrow exception are not so mutually connected *** that the city would not have passed the former without the latter. [Citations.] In short, they are severable."). As a result, even if those plaintiffs, and Henderson here, succeeded in striking the challenged provisions, the provision preventing them from obtaining relief would remain. *Id.* (citing *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 423 (2005)). Because Henderson's claimed injury cannot "be prevented or redressed by the grant of the requested relief," he lacks standing to bring his constitutional challenges to the ordinances. *Glisson*, 188 Ill. 2d at 221.

¶ 21    Henderson claims the primary residence rule is satisfied because he lives next door to the subject property, but Henderson misinterprets the factor which addresses the degree to which the sought adjustment "varies from the prevailing limitations." § 4-14-100(a)(2). The prevailing limitations are the statutory restrictions imposed by the Code; in this case, the limit on the number

of shared housing units in a building that is not one's primary residence. For a two-to-four-unit building, that limitation is zero, meaning that without an adjustment, a host is allowed zero shared housing units. Henderson's first application sought an adjustment that varied from that prevailing limitation by one. On the facts presented, the commissioner concluded Henderson had presented evidence of unique and unusual circumstances sufficient to justify a deviation from the limitation, zero to one. On his subsequent applications, because he had already been granted an adjustment, Henderson's sought adjustments substantially varied from the prevailing limitation, allowing three units where the limit was zero. Moreover, the ordinance defines a primary residence as "the dwelling where a person lives on a daily basis at least 245 days in the applicable calendar year." § 4-14-010. As Henderson emphasizes that he does not live at 1151 W. Waveland and instead lives next door, the subject property is not his primary residence, and in the absence of an adjustment, he is not permitted the shared housing units he seeks to register.

¶ 22    Henderson also raises a facial challenge against the adjustment provision, arguing its lack of delineated numerical guidelines, and the implication that businesses may need to provide sensitive or personal information to demonstrate a financial burden, violate the privacy clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 6. The decision to include or omit numerical guidelines is a legislative decision made by the Chicago City Council. Henderson does not explain what, if any, documents or information he considers too intrusive to have provided to the commissioner, and the ordinance does not require applicants to provide any documentation at all. The petitioner bears the burden of proof and may choose to support their application with whatever documents they wish. *Marconi*, 225 Ill. 2d at 532. An ordinance is only facially unconstitutional if no circumstances exist where it may be valid, *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296,

306 (2008), and Henderson has not carried the burden of establishing the ordinance is unconstitutional even as applied to him.

¶ 23 Henderson next argues that the adjustment provision is unconstitutional, as applied, because the denial of his application would result in his losing equity in the property, constituting an unreasonable property seizure under state and federal constitutions. Ill. Const. 1970, art. I, § 6; U.S. Const., amend. XIV. "[T]he privilege of every citizen to use his property according to his own will is both a liberty and a property right." *Napleton*, 229 Ill. 2d at 310 (quoting *Western Theological Seminary v. City of Evanston*, 325 Ill. 511, 521 (1927)). However, such a right gives way to the local exercise of police power in enacting restrictions for the protection of the "health, comfort, safety, and welfare of society." *Id.* (quoting *Booth v. People*, 186 Ill. 43, 48-49 (1900)). A city's exercise of its police power in this way is subject to rational basis scrutiny. *Id.* at 315. Henderson's right to use his property as he wishes, including his right to earn and retain equity, are therefore subject to regulations rationally related to a legitimate purpose. *Id.* at 314; see also *Hannifin Corp. v. City of Berwyn*, 1 Ill. 2d 28, 35 (1953). Because the ordinance works to limit the number of shared housing units in the city to reduce the burden or nuisance they may impose upon neighboring residents, and the ordinance is a rational means to achieve that end, the denial of Henderson's application for a commissioner's adjustment did not violate his constitutional rights.

¶ 24 Henderson claims that the $5000 fines for not removing unregistered rental listings are disproportionate to the offense and therefore violate the federal constitution. U.S. Const., amend. VIII; § 4-14-030(c). Henderson presented no evidence before the commissioner that he had ever been fined under this provision, and therefore lacks standing to bring the challenge. *Glisson*, 188 Ill. 2d at 221 ("[S]tanding requires some injury in fact to a legally cognizable interest ***.").

¶ 25    Henderson's final constitutional contention is that efforts by the commissioner and the department to discover noncompliant rental listings constitute warrantless searches. Ill. Const. 1970, art. I, § 6. Henderson does not cite any ordinance and does not allege he has been the target of any warrantless searches, but alleges that, to enforce section 4-14, municipal employees would be required to conduct electronic searches to locate offending listings. Because Henderson seems to be challenging the constitutionality of the Department's method of enforcing the ordinance, and that method, whatever it may be, is not before us on this appeal, this argument is forfeited.

¶ 26                                      III. CONCLUSION

¶ 27    For the foregoing reasons, the decision of the commissioner of the Department of Business Affairs and Consumer Protection is affirmed.

¶ 28    Affirmed.